# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| LED WAFER SOLUTIONS, LLC § | |
| § | |
| Plaintiff, § | |
| § | Civil. Action No. 6:21-CV-00292-ADA |
| v. § | |
| § | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., § | |
| SAMSUNG ELECTRONICS AMERICA, § | |
| INC. § | |
| § | |
| Defendants, § | |
| § | |
| and § | |
| § | |
| SEOUL SEMICONDUCTOR CO., LTD., § | |
| § | |
| Intervenor-Defendant. § | |
| § | |

# LED WAFER SOLUTIONS, LLC'S
# SUR-REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

**Cases:**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | "OPTICALLY DEFINABLE MATERIAL" (Claim 1 of the '137 and '405 Patents) | 1 |
| III. | "COVERING AT LEAST A PORTION OF THE ABOVE COMPONENTS" | 2 |
| IV. | "SAID SHAPED EDGE CONFIGURED TO REFLECT LIGHT GENERATED BY SAID LIGHT EMITTING DEVICE OUTWARDLY THEREFROM" | 4 |
| V. | "A REQUIRED POSITION OF SAID DEVICE WITH RESPECT TO SAID OPTICALLY PERMISSIVE [FLAT] COVER SUBSTRATE" | 4 |
| VI. | "LIFTING OFF SAID SUBSTRATE FROM SAID LED; FORMING A METAL PAD ON THE NEWLY EXPOSED LED SURFACE" | 5 |
| VII. | "METALLIZATION LAYER" TERMS | 5 |
| VIII. | "WHEREIN SAID INTRINSIC LAYER IS BETWEEN SAID POSITIVELY-DOPED LAYER AND A FIRST SURFACE OF SAID LED IS IN DIRECT CONTACT WITH A SAPPHIRE LAYER" | 6 |
| IX. | ORDERING OF STEPS 12[c], [e]-[g] | 7 |
| X. | "THERMALLY CONDUCTIVE LAYER" | 7 |
| XI. | "RELIEF" | 8 |
| XII. | "HAS THE PROPERTY OF HIGH THERMAL CONDUCTIVITY" | 9 |
| XIII. | "CARRIER LAYER" | 10 |
| XIV. | "ELECTRICAL CONTACT IN ELECTRICAL COMMUNICATION . . ." | 10 |
| XV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

*Aventis Pharma S.A. v. Hospira, Inc.*,
   675 F.3d 1324 (Fed. Cir. 2012) .................................................................................. 3

*CBT Flint Partners*,
   654 F. 3d at 1358-1359 ............................................................................................ 6, 7

*Cheetah Omni LLC v. Alcatel-Lucent Inc.*,
   939 F.Supp.2d 649 (E.D. Tex. 2013) ......................................................................... 3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) .................................................................................. 9

*Eon Corp. IP Holdings v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016) .................................................................................. 1

*Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2020-1528,
   WL 3716397, at 4 (Fed. Cir. Aug. 23, 2021) ............................................................. 3

*Evicam Int'l, Inc. v. Enforcement Video, LLC*, No. 4:16-cv-105,
   WL 6470967, at 18-19 (E.D. Tex. 2016) ................................................................. 10

*Harris Corp. v. Fed. Express Corp.*,
   502 F. App'x 957 (Fed. Cir. 2013) ............................................................................. 3

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   450 F.3d 1350 (Fed. Cir. 2006) .................................................................................. 1

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed.Cir.2014) .................................................................................... 9

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999) ........................................................................ 4, 5, 11

*Laryngeal Mask Co. v. Ambu*,
   618 F.3d 1367 (Fed. Cir. 2010) .................................................................................. 9

*Microsoft Corp. v. i4i Ltd. Partn'p*,
   131 S. Ct. 2238 (2011) .............................................................................................. 10

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003) .................................................................................. 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ................................................................................... 7

*Pers. Web Techs., LLC v. Apple, Inc.*,
  848 F.3d 987 (Fed. Cir. 2017) ..................................................................................... 3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................... 9

*Quantum Corp. v. Rodime, PLC*,
  65 F.3d 1577 (Fed. Cir. 1995) ..................................................................................... 2

*Rembrandt Data Technologies, LP v. AOL, LLC*,
  641 F.3d 1331 (Fed. Cir. 2011) ................................................................................... 7

*U.S. Well Servs., Inc. v. Halliburton Co.*,
  No. 6:21-cv-00367-ADA, slip. op. at 12 (W.D. Tex. Jan. 17, 2022) ......................... 9

**Statutes:**

35 U.S.C. § 282 ............................................................................................................ 10

**I.       INTRODUCTION**

The Court should adopt Plaintiff LWS' proposed constructions for each of the disputed terms. LWS' proposals are consistent with the intrinsic evidence and Federal Circuit law and would help clarify to the jury the proper scope of the claim terms.

**II.      "OPTICALLY DEFINABLE MATERIAL" (Claim 1 of the '137 and '405 Patents)**

The Court should construe "optically definable material" to mean "a material within or adjacent to the optically permissive layer that changes an optical characteristic of emitted light." Merely adopting an unspecified "plain and ordinary meaning" for this term as Defendants propose would be insufficient because such meaning does not adequately define the optically definable material's location, which is necessary for the semiconductor device to function properly. *See, e.g., Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (overturning a district court's adoption of the "plain and ordinary meaning" for a claim term because that "left [a disputed] question of claim scope unanswered").

As explained in LWS' Response brief, the applicant made clear that the optically definable material can be within <u>or contiguous</u> (i.e., adjacent) to the optically permissive layer and not merely "proximal to." This location is necessary to provide color control and emission of selective desired light out of the LED device when the "photons emitted from LED layer 600 travel through said optically transparent adhesive layer 640" and the optically definable layer. '137 Patent, 5:1-8; '405 Patent, 5:16-23 (same). Adopting Defendants' plain and ordinary proposed construction is thus incorrect because it would potentially thwart the objectives of the patent and is contrary to settled Federal Circuit law. *See, e.g., Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354 (Fed. Cir. 2006) (affirming district court's construction of the term "host interface" to require a "direct parallel bus interface" and not just any serial or parallel interface because *inter alia* the use of the direct parallel bus was "very important" to the function of the invention to achieve it stated objectives).

Defendants' argument concerning the variation in claim language between the '137 Patent and the '405 Patent lacks merit. While Defendants agree that claim 1 of the '137 Patent recites that the "optically definable material" must be "proximal to or within" the optically permissive layer, they fail to acknowledge that this same language appeared in claim 1 of the '405 Patent up until a May 21, 2014 office action in which the examiner rejected claim 1 as obvious over U.S. Pub. No. 2010/0207145 ("Yoo") in view of other prior art. The examiner made clear in a September 25, 2014 interview that the basis for that objection related to the relationship of the passivation layer with the surrounding/contacting layers (e.g., the LED, sapphire substrate, and layer 1030) as well as the angled shape of the passivation layer and was unrelated claim 1's recited location of the optically definable material. Dkt. 48, Ex. B at 74. To overcome that office action, the applicant amended claim 1 to more clearly specify that the optically permissive layer is "in direct contact with said. sapphire layer." *Id*. at 49. Although the applicant also removed the same "proximal to or within" language that appears in claim 1 of the '137 Patent in the same response, there is no evidence that the applicant intended to limit the scope of the location of the optically definable material to only within the optically permissible layer because the basis for the rejection and the subsequent claim amendment were <u>entirely unrelated</u> to the location and functionality of the optically definable material.

### III.   "COVERING AT LEAST A PORTION OF THE ABOVE COMPONENTS"

Defendants' argument in their Reply brief focuses only on whether the cover substrate must cover at least a portion of all "the above components" and fails to address LWS' proposal that relates to the cover substrate's purpose and functionality. With respect to the former issue, Defendants are mistaken. It is well-settled that the plain and ordinary meaning of "at least a portion of" may include the whole but does not require it. *See, e.g., Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1581 (Fed. Cir. 1995) ("[T]he term 'at least' means 'at the minimum.'"). Injecting any language that would require "all" of the components to be covered as Defendants propose would fundamentally change the meaning of the limitation and is wrong as a matter of law.

Moreover, Defendants' argument regarding whether the term "at least a portion of the above components" is (or is not) the same as "at least one of" a group of components misses the point. Defendants' reliance on *Cheetah Omni* for this premise is misplaced.[1] There, the court determined that the term "the first part" is the entire first part because the claim specifically distinguished between "the first part" and "at least a portion of the first part," and if "the first part" meant "at least a portion of the first part," "it would be redundant to include 'at least a portion of' in the Claim." *Cheetah Omni LLC v. Alcatel-Lucent Inc.*, 939 F.Supp.2d 649, 657-58 (E.D. Tex. 2013). The same analogy is altogether inapplicable here. If the applicant wanted to claim that all components are either fully or partially covered by the cover substrate, he would have claimed "covering at least a portion of all of the above components." *See e.g., Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 991 (Fed. Cir. 2017) ("The 'at least some' language makes it impossible to interpret the terms at issue to require use of 'all' of the data."). "At least a portion of" means that some but not necessarily all of "the above components" are covered. LWS' proposed construction merely clarifies the list of recited components and does not otherwise change the meaning of the claim.

Finally, Defendants' argument regarding the patents' description of a preferred embodiment lacks merit because the figures disclosed in the patents disclose a particular way a cover substrate may be used, but these examples are not accompanied by any indication that the patentee intended to limit his claims in the manner Defendants propose. As the Federal Circuit has repeatedly held, "the fact that embodiments (or even every embodiment) in the specification depict a particular arrangement or structure does not require reading that arrangement or structure into the claims." *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2020-1528, 2021 WL 3716397, at *4 (Fed. Cir. Aug. 23, 2021); s*ee also Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir.

---

[1] Defendants rely once again on *Harris Corp. v. Fed. Express Corp.*, 502 F. App'x 957, 963 (Fed. Cir. 2013), which is inapposite for the reasons discussed in LWS' Response Brief. Dkt. 48 at 5-6.

2012) ("'[I]t is. . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation' to limit a claim term beyond its ordinary meaning.") (citation omitted).

## IV. "SAID SHAPED EDGE CONFIGURED TO REFLECT LIGHT GENERATED BY SAID LIGHT EMITTING DEVICE OUTWARDLY THEREFROM"

Defendants agree that the term "said shaped edge configured to reflect light generated by said light emitting device outwardly therefrom" does not require that light is reflected outwardly only from the "shaped edge":

> Plaintiff also incorrectly asserts that Defendants' construction "limits the light to be reflected outwardly only from the 'shaped edge.'" The Court should ignore this straw man response, which grafts a negative requirement—that reflection may not occur at any location other than the shaped edge—into Defendants' construction.

Dkt. 50 at 4-5 (internal citations omitted). Based on Defendants' concession that light is not reflected outwardly only from the "shaped edge," the Court should reject Defendants' proposed construction because it is inconsistent with the parties' understanding, would lead to jury confusion, would deviate from the term's plain and ordinary meaning, conflict with the specification, and erroneously rewrite the claims. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the applicant."). The Court should thus adopt LWS' proposed construction.

## V. "A REQUIRED POSITION OF SAID DEVICE WITH RESPECT TO SAID OPTICALLY PERMISSIVE [FLAT] COVER SUBSTRATE"

The term "required position" is not indefinite. The intrinsic evidence shows that (1) proper alignment of the cover substrate is necessary to align the light emitting device with an optically permissive cover substrate to protect one or more components of the light emitting device, and (2) the use of alignment marks for the purpose of aligning components during assembly was well-known in the art. This evidence includes at least the specifications of both patents, which disclose that alignment marks are used to properly align the optically permissive cover substrate over one or more components of the LED device ('137 Patent, 5:9-16; 2:6-10; Fig. 6), the prosecution

history of the '137 Patent in which the examiner recognized that alignment marks were known to enable "precise positioning and registration of the device components during assembly" (Exhibit C at 15 (2013-11-22 Non-Final Rejection)), and prior art cited by the examiner during prosecution of the patents that shows it was known at the time to use alignment marks in order to align the LED device with a cover substrate (Exhibit F, [0054]; *see also id.*, [0035]).

The Court should construe "a required position of said device with respect to said optically permissive [flat] cover substrate" to mean "align the light emitting device with an optically permissive cover substrate to protect one or more components of the light emitting device." LWS' proposed construction is consistent with the intrinsic evidence and provides additional clarity to a fact finder, and a POSITA would understand with reasonable certainty what the applicant meant when he used the term "required position." Defendants' "indefiniteness" argument lacks merit and should be rejected.

## VI. "LIFTING OFF SAID SUBSTRATE FROM SAID LED; FORMING A METAL PAD ON THE NEWLY EXPOSED LED SURFACE"

This term should be construed according to its plain and ordinary meaning and Defendants seek to rewrite the readily understood phrase "newly exposed LED surface" to mean the LED surface exposed by "lifting off said substrate from said LED." Reply at 6. Defendants' construction would deviate from the term's plain and ordinary meaning. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

## VII. "METALLIZATION LAYER" TERMS

Defendants' purported clear and unmistakable disclaimer argument does not require the Court to construe the claim. It is clear from the patent specification and the claims that a metallization layer is deposited on the positively doped surface and negatively doped surface. As shown in Figure 3 of the patent specification, metallization layer [320] is not a continuous layer,

but is a metallization layer, disposed on two different surfaces. No further construction is necessary.

### VIII. "WHEREIN SAID INTRINSIC LAYER IS BETWEEN SAID POSITIVELY-DOPED LAYER AND A FIRST SURFACE OF SAID LED IS IN DIRECT CONTACT WITH A SAPPHIRE LAYER"

Defendants' indefiniteness position is incorrect for at least two reasons. **First**, it manufactures an alternative "correction" to the claim language in an attempt to show that there is "reasonable debate." Reply at 9. Instead of citing a portion of the specification or prosecution history to show that Claim 12 contains more than an obvious error in the patent claim, Defendants employ diversionary tactics to show an "alternative." *Id*. However, in *CBT Flint*, the Federal Circuit reversed a district court's determination that it could not correct a patent error where there were "at least three alternatives that appear[ed] to be equally reasonable." 654 F.3d at 1358. This suggested "alternative" proposed by Defendants does not alter the fact that the applicant intended that the "intrinsic layer" recited in claim 12 is located between the two doped layers (i.e., the positively-doped layer and the negatively-doped layer). Similar to Claim 12's recited "method," Claim 1, recites a device whereby the "intrinsic region" is located between the two doped layers (i.e. positively-doped region and the negatively doped region:

> 1. A light emitting device, comprising:
> a semiconductor LED including a positively-doped region, an intrinsic region, and a negatively-doped region, wherein said intrinsic region is between said positively-doped region and <u>said negatively-doped region</u>.

The specification further confirms that the omission was an obvious and correctable error. For example, the '405 Patent refers repeatedly and exclusively to an intrinsic layer disposed between an N-type doped layer and a P-type doped layer. '405 Patent, 1:13-16; *id*., 4:7-8. There is no reasonable debate as to what was intended, and Defendants have not shown anything in the prosecution history that suggests a different interpretation. *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

**Second**, the case Defendants rely on is distinguishable. Reply at 9 (citing "*Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011)"). In *Rembrandt*, the patent owner asked the court to insert the phrase "transmitter section for" to eliminate the IPXL situation of claiming "both an apparatus and a method of using that apparatus." *Id*. at 1339. The *Rembrandt* court held the term indefinite because patent owner requested "adding an apparatus" to render the claim valid, not simply to correct a typographical mistake, as Plaintiff requests here. *Id*. Defendants also try to manufacture a new rule that Courts can only add "single words," and not phrases to correct inadvertent clerical errors. Reply at 9. Again, Defendants employ an incorrect legal standard as the quantity of the words is not what is measured by the Court, but whether from the point of view of one skilled in the art the correction is consistent with the invention and does not impact the scope of the claim. *CBT Flint Partners*, 654 F. 3d at 1358 – 1359. As stated above, there is no reasonable debate that the intrinsic layer is between the positively doped and negatively doped layers and the Court's correction will not impact claim scope.

## IX. ORDERING OF STEPS 12[c], [e]-[g]

Defendants have not provided a basis as to why construction is necessary. There is no dispute, and the claims make it clear that claim element 12(c), must occur before 12(e). Additionally, there is no dispute that 12(e) must occur before 12(f) / 12(g)[2]. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362* (Fed. Cir. 2008) ("We, however, recognize that district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.").

## X. "THERMALLY CONDUCTIVE LAYER"

LWS' construction is consistent with the intrinsic evidence. The specification's description of the thermally conductive layer is nearly identical to LWS' proposed construction. "In another aspect, the thermally conductive layer comprises metal or an organic material with a physical property of high thermal conductivity." '612, 4:11-15. And the portion of the specification that

---

[2] Claim element 12(f) and 12(g) can occur at the same time or in any order after 12(e).

Defendants rely on is incorrect as it is describing an alternate embodiment of a "passivation layer" 81. Reply at 10 (citing '612 Patent, 10:43-44). This part of the specification is describing properties of the passivation layer and Defendants omit the preceding and relevant portion, "The passivation layer 81 is a nonconductive layer comprising SiO2, SiN, AlN, Al2O3 or organic material, such as, epoxy, or electrophoretic deposited paint as used in the car industry or spray coating. Passivation layer 81 thickness ranges from 1 to 40 microns, depending on the material and required electrical passivity." '612 Patent, 10:38-43. And, in the alternative, the passivation layer is thermally conductive layer. *Id.*, 10:43-46. The claims make clear that the thermally conductive layer is "disposed on the second LED surface of the semiconductor LED." '612 Patent, cl.1. Further, the claims require, "wherein the carrier wafer and the thermally conductive layer define a relief to expose at least a portion of the second LED surface." *Id*. The passivation layer is not disposed on the second surface of the semiconductor LED, but instead added according to the following:

> After etching, a passivation layer will be applied to the distal side of the silicon wafer 31. [t]he passivation layer is typically an organic material and hence not a good heat conductor. It would be desired to remove the passivation layer from the thermal via.

*Id*., 9:63-67. Defendants erroneously use an alternate embodiment of a different layer – i.e. "passivation layer" - and then try to import that into the construction of "thermally conductive layer". As such, Defendants' arguments fail.

## XI.  "RELIEF"

Defendant's Reply Brief again acknowledges that "relief" is limited to two expressly defined functionalities – a "thermally conducting hole," and "an electrical connection between layers in a physical electronic circuit that goes through a plane of one or more adjacent layers." '612 Patent, 9:4-19; Dkt. 50 at 20. As stated in LWS' Responsive brief, these separate, mutually exclusive embodiments describe different physical characteristics. Dkt. 48 at 23.

Despite these clear, distinct interpretations of "relief," Defendants again choose to just construe the term as "hole." It is clear that claim 1 is described with particularity, with the claim

language stating that the relief is in the context of a "thermally conductive layer defin[ing] a relief." '612 Patent, 12:29-31. To be a lexicographer, "a patentee must use a special definition of the term that is clearly stated in the patent specification or file history." *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010) (internal citation omitted).

Defendants' attempt to take a statement made in an IPR out of context does not save their position either, and notably fails to even consider or address the term "relief" as it appears in the context of the asserted claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) (claim terms are read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent"). The claims and the patent support LWS' position.

## XII. "HAS THE PROPERTY OF HIGH THERMAL CONDUCTIVITY"

Defendant's position appears to be that any and all terms that utilize any comparative terms, such as "high," "low," "large," "small," etc. The patent is clear as to the term "high thermal conductivity." The term "high thermal conductivity" is a term of art that is well-understood by a POSITA. Exhibit A, ¶¶48-52. Defendants essentially present no substantive argument, and instead present cases such as *U.S. Wells*, which have no applicability. *U.S. Well Servs., Inc. v. Halliburton Co.*, No. 6:21-cv-00367-ADA, slip. op. at 12 (W.D. Tex. Jan. 17, 2022). This case, like Defendants' position, has no applicability.

The *U.S. Wells* case involved a patent, that, as Defendants cite, included *multiple* terms of degree for high, very high, and medium. Dkt. 50 at 19. The '612 Patent mentions one term with respect to thermal conductivity – high thermal conductivity, and provides examples as to what constitutes an element or material having high thermal conductivity. '612 Patent, Col. 9:57-60. "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). One way for patents to provide sufficient context for terms of degree is to give examples of what qualifies. *DDR Holdings, LLC*

*v. Hotels.com*, *L.P.,* 773 F.3d 1245, 1260 (Fed. Cir. 2014) ("For other terms like, for example, terms of degree, specific and unequivocal examples may be sufficient to provide a skilled artisan with clear notice of what is claimed."); *see also Evicam Int'l, Inc. v. Enforcement Video, LLC*, No. 4:16-cv-105, 2016 WL 6470967, at *18-19 (E.D. Tex. 2016) (finding "the term 'large' is sufficiently clear from the context of the claims as referring to storage capacity that is at least large enough to be useful for storing surveillance video"). The '612 Patent provides such examples, stating "as previously enumerated, any of the shown elements can have some type of reflective composition in addition to the property of high thermal conductivity." '612 Patent, Col. 9:57-60. Further, the patent refers to particularized elements, such as Silicone with Zinc Nitride. '612 Patent, Col. 9:48-51.

A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. Partn'p*, 131 S. Ct. 2238, 2243 (2011). Defendants' attempt to provide inapplicable cases and take deposition testimony out of context that do not rebut the clear examples in the patent do not overcome this presumption. Plain and ordinary meaning should apply.

### XIII.   "CARRIER LAYER"

The intrinsic evidence is clear and undisputed that "carrier layer" refers to a conductive property that is both thermally and electrically conductive ('822 Patent, 3:62-67). However, in order to narrow the disputes between the parties, LWS agrees to apply plain and ordinary meaning for this term.

### XIV.   "ELECTRICAL CONTACT IN ELECTRICAL COMMUNICATION . . ."

The core of this dispute is the meaning of the term "electrical communication." Defendants' Reply Brief is much to do about nothing. Defendants provide no reasoning as to why LWS' application of plain and ordinary meaning is wrong, erroneous, or should not be applied. Notably, Defendants provide no reasons or support as to why this readily understood term should be rewritten to inject "flow," "conduction path," or any other terminology proposed by Defendants.

"Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999). This Court should reject Defendants' attempt to rewrite a readily understood term and apply plain and ordinary meaning.

## XV.   CONCLUSION

For the foregoing reasons, LWS respectfully request that this Court adopt LWS' proposed constructions.

| | |
|---|---|
| Date: February 16, 2022 | Respectfully Submitted,<br><br>*/s/ Bradley D. Liddle*<br>E. Leon Carter<br>lcarter@carterarnett.com<br>Texas Bar No. 03914300<br>Bradley D. Liddle<br>bliddle@carterarnett.com<br>Texas Bar No. 24074599<br>Scott W. Breedlove<br>sbreedlove@carterarnett.com<br>State Bar No. 00790361<br>Joshua J. Bennett<br>jbennett@carterarnett.com<br>Texas Bar No. 24059444<br>Michael Pomeroy<br>mpomeroy@carterarnett.com<br>State Bar No. 24098952<br>Nathan Cox<br>ncox@careterarnett.com<br>Texas Bar No. 24105751<br>CARTER ARNETT PLLC<br>8150 N. Central Expy, 5th Floor<br>Dallas, Texas 75206<br>Telephone No. (214) 550-8188<br>Facsimile No. (214) 550-8185<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**LED WAFER SOLUTIONS, LLC.** |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 16, 2022, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

/s/ Bradley D. Liddle