**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| LED WAFER SOLUTIONS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE No. 6:21-CV-00292-ADA |
| | § | |
| SAMSUNG ELECTRONICS CO., | § | |
| LTD., SAMSUNG ELECTRONICS | § | |
| AMERICA, INC. | § | |
| | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO TRANSFER

## **Table of Contents**

Table of Contents ................................................................................. ii

Table of Authorities ............................................................................ iii

Introduction ....................................................................................... 1

I. Background ..................................................................................... 1

A. Samsung's delay in bringing the motion to transfer. ................... 1

B. Samsung's substantial connection to Texas and specifically, the Western District of Texas. ......................................................... 3

II. Argument & Authorities ............................................................... 6

A. The private interest factors weigh heavily against transfer. ...... 6

1. The relative ease of access to sources of proof weighs against transfer. ...... 6

2. The relevant, material non-party witness is located within this Court's subpoena range. .............................................................. 9

3. The identified willing witnesses are predominantly located closer to this District than NDCA. ............................................. 10

4. As a result of Samsung's delay and Samsung's Co-Defendant, judicial economy strongly weighs against transfer.................................... 11

B. The private interest factors weigh against transfer. .................. 14

1. The time to trial is shorter, and consistently has been, in this District than in the Northern District of California. ............................................ 14

2. The local interest factor strongly weighs against transfer. ........ 14

3. The remaining factors are neutral. ............................................ 15

III. Conclusion .................................................................................. 15

Certificate of Service ......................................................................... 17

## Table of Authorities

**Cases**

*BillJCo, LLC v. Apple Inc.,*
No. 6:21-CV-00528-ADA (W.D. Tex. Feb. 1, 2022) ..................................................... 14

*East Tex. Boot Co., LLC v. Nike, Inc.,*
No. 2:16-cv-0290-JRG-RSP, 2017 WL 28559065 (E.D. Tex. Feb. 15, 2017) ............... 9

*EcoFactor, Inc. v. Vivint, Inc.,*
No. 6-20-CV-00080-ADA, 2021 WL 1535414 (W.D. Tex. Apr. 16, 2021). .................. 14

*eRoad Ltd. v. PerDiemCo LLC*
No. 6:19-CV-00026-ADA, 2019 WL 10303654 (W.D. Tex. Sept. 19, 2019) ................. 6

*In re Genentech, Inc.,*
566 F.3d 1338 (Fed. Cir. 2009) .................................................... 9, 10, 12, 14

*In re Juniper Networks, Inc.,*
No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ........................................... 9

*In re Supercell Oy,*
806 F. App'x 1000 (Fed. Cir. 2020) .................................................................... 14

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ........................................................................... 6

*Kuster v. W. Digital Techs.,*
2021 WL 466147 (W.D. Tex. Feb. 9, 2021) .................................................................. 7

*Monarch Networking Sols. LLC v. Cisco Sys., Inc.,*
No. 2:20-CV-00015-JRG (E.D. Tex. Jan. 7, 2021) ...................................................... 12

*Peteet v. Dow Chem Co.,*
868 F.2d 1428 (5th Cir. 1989) ...................................................................... 13

*Solas OLED Ltd. v. Apple Inc*
No. 6:19-CV-00537-ADA, 2020 WL 3440956 (W.D. Tex. June 23, 2020) ...... 4, 5, 9, 10

*SynKloud Techs., LLC v. Dropbox, Inc.,*
2020 WL 2494574 (W.D. Tex. May 14, 2020) ............................................................. 6

*Utterback v. Trustmark Nat'l Bank,*
716 Fed. Appx. 241 (5th Cir. 2017) ............................................................................. 13

**Statutes**

FED. R. CIV. P. 45(c)(1)(A) ........................................................................................... 10

FED. R. CIV. P. 45(c)(1) (B)(ii) ..................................................................................... 10

Samsung claims litigating in the Western District of Texas is inconvenient, yet Samsung: 1) waited eight months after the filing of the Complaint to move to transfer; 2) filed a motion asking this Court to dismiss claims on substantive, rather than procedural or jurisdictional, grounds; 3) did not object when Seoul Semiconductor, who claims to have the best evidence related to accused infringement, sought to intervene in this case and stipulated that it would not seek transfer; 4) announced, a few days before filing the motion, a new $17-billion dollar chip manufacturing plant in Taylor, Texas in addition to the chip manufacturing plant it has had in Austin since the 1990s; 5) has previously sought transfer to Austin in at least five other cases in the last two years; 6) employs more people in Plano, Texas than any other SEA location; and, 7) currently lists by far the most job openings at its Austin and Plano facilities compared to any other Samsung facilities in the United States. Samsung's argument for transfer is without merit.

Furthermore, Samsung took the position in its Motion and in venue discovery that all relevant witnesses and documents are in South Korea or NDCA. Yet, after Plaintiff's own investigation, it turns out Samsung has multiple relevant witnesses in Texas including two Samsung employees that were previously identified in the *Solas* case before this Court as having relevant knowledge related to two of the accused products at issue in this case. Notably, these witnesses, and others found by Plaintiff, were not disclosed in the Motion or in responses to any of Plaintiff's discovery requests. The difference between this case and the *Solas* case? In the *Solas* case, Samsung indicated it wanted to intervene in a case before this Court whereas here it seeks to leave this Court. Balancing all the factors and evidence leaves only one conclusion, litigating in this Court is not inconvenient for Samsung.

## I. BACKGROUND

### A. Samsung's delay in bringing the motion to transfer.

On March 25, 2021, Plaintiff LED Wafer Solutions, LLC ("LWS") filed this

patent infringement case against Defendants Samsung Electronics Co., LTD. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") asserting four United States Patents, U.S. Patent No. 8,941,137 (the "'137 Patent"), U.S. Patent No. 8,952,405 (the "'405 Patent"), U.S. Patent No. 9,502,612 (the "'612 Patent"), and U.S. Patent No. 9,786,822 (the "'822 Patent") (collectively, the "Patents-In-Suit"). Pl.'s Compl, ECF No. 1. LWS's complaint alleges that certain Samsung products, identified by specific model numbers, including mobile phones, tablets, televisions, and LED lighting chips infringe the Patents-In-Suit ("Accused Products"). *Id*. ¶¶ 21, 58, 97, 132.

On July 20, 2021, Samsung sought affirmative relief from this Court, filing a motion to dismiss LWS's claims for willful and indirect infringement. ECF No. 14.

On August 13, 2021, LWS served its Preliminary Infringement Contentions and then amended contentions on November 12, 2021.

On August 16, 2021, Samsung filed its original answer. ECF No. 19.

On August 24, 2021, LWS and Samsung filed a Joint Motion for Entry of Agreed Scheduling Order with a proposed Trial date of February 16, 2023. ECF No. 20.

On September 7, 2021, Seoul Semiconductor, Co. ("SSC") filed its Motion to Intervene. ECF No. 23. In it, SSC explicitly conditioned its intervention on being available to litigate in this Court and committed that "it will not seek transfer if permitted to intervene" in order to avoid delaying the litigation. *Id.* at 12; SSC Reply Br. at 2, ECF No. 30. Samsung was unopposed to the motion.

On September 24, the Court entered the parties agreed scheduling order. ECF No. 27. On October 29, 2021, Samsung and SSC served their Preliminary Invalidity Contentions.

On November 16, 2021, Samsung filed a Joint Motion to Extend Scheduling Order deadlines extending the *Markman* hearing by two weeks but keeping the

February 16, 2023 trial date. ECF No. 36. The Court granted the extension on November 17, 2021. ECF No. 38.

It wasn't until November 26, 2021, a few days after announcing it would be building a new $17 billion facility in this District, that Samsung filed the instant Motion to Transfer, ECF No. 40, indicating for the first time and contrary to its prior conduct, that litigating this case in the Western District of Texas is inconvenient.

### B. Samsung's substantial connection to Texas and specifically, the Western District of Texas.

In its Motion, Samsung contends this District has "No Local Interest" but "California has a strong interest in adjudicating disputes that involve businesses with operations in California, like SEA, SSI, SSC, ███████████ Mot. at 14–15. Samsung took this position despite its extensive presence in this State and this District, and, notably, just a few days before the formal announcement that is building an $17 billion facility in this District in addition to the large and long-established Austin and Plano locations. Ex. 3.

Although Samsung claims its Austin facility "created $4 billion in economic activity for the greater Central Texas region [and is] part of the <u>fabric of this community</u>[,]" for the purposes of *this* litigation, there is no local connection. Ex. 1 at 2 (emphasis added). Samsung's presence in Texas, and specifically in the locale of this District, cannot be understated. Samsung opened its Austin facility in 1996 and has grown to over 3,000 employees in a 2.45 million square foot facility. Ex. 2. Since 1996, Samsung has invested "approximately $17 billion in . . . the Austin, Texas campus making it one of the largest direct foreign investments in <u>United States history</u>." *Id.* (emphasis added). Doubling down on its connection with this District, the new $17 billion facility outside of Austin is "the largest foreign direct investment in the state of Texas, ever," according to Governor Abbott, Ex. 3 at 2, and Samsung's "largest investment in the U.S." *Id.* at 5.

3

Samsung has repeatedly stated that this District is its "home", it is part of the "fabric of this community," and it is "committed to Austin." Ex. 5. And for good reason, for this new facility alone, Samsung will be receiving $3 billion in incentives because the local government "pulled out the stops, including waiving 90% of property taxes for a decade, and 85% for the following 10 years." Ex. 4 at 4; *id.* at 2 (noting that, according to Samsung executive Kinam Kim, these incentives were part of the reason to build in this District). Samsung's presence in this District is expected to continue growing, in particular with regards to LEDs, as it recently announced its partnership with Tesla, which is headquartered in this District, is expanding as Samsung will be supplying the LEDs for the headlights used in Tesla's cars.[1] Ex. 6.

In addition to its extensive and growing presence within this District, Samsung failed to mention in its Motion that it also has a large office[2] in Plano, Texas just a little over 100 miles from this Court. Curiously, Samsung noted it ███████████ ██████████████████████████████████████ but left out that it has over 1,000 in the Dallas area. Exs. 7, 8, and 10. It turns out, the Plano office is actually SEA's "largest employee population in the U.S." Ex. 9. Samsung has been in Dallas since at least the 1990s and houses the headquarters for its sales operations. Ex. 8 at 4.[3]

But, what is even more concerning is, in the *Solas OLED Ltd. v. Apple Inc.* case before this Court, Samsung indicated to Solas its "intention to file a motion to intervene to become a party . . . ." No. 6:19-CV-00537-ADA, 2020 WL 3440956, at *3

---

[1] In addition to moving its headquarters to this District, the Model Y, just one of the cars Samsung will be supplying infringing LEDs, is expected to be one of, if not the number one, best selling cars in 2022. https://www.businessinsider.com/elon-musk-tesla-model-3-world-best-selling-car-electric-2021-4

[2] The Plano office appears to be over 300,000 square feet and houses over 1,000 employees. Exs. 7, 8, and 10.

[3] The article mentions Samsung Telecommunications America ("STA"). STA was headquartered in Dallas and was a sales subsidiary of Samsung. It was which was merged into SEA in 2015. https://direporter.com/industry-news/marketing/samsung-electronics-america-absorb-samsung-telecommunications-america; https://www.samsung.com/global/business/networks/insights/press-release/samsung-telecommunications-america-showcases-commitment-to-4g-wireless/ (noting STA as "the No. 1 mobile phone provider in the U.S.").

(W.D. Tex. June 23, 2020). As noted by the Court and attached to Solas's response to Apple's motion to transfer, Samsung identified in its initial disclosures seven witnesses in Asia and two witnesses with relevant knowledge as to the accused products located in the Dallas area. *Id.*; Solas Response at 5, Ex. 11. The two witnesses Samsung disclosed were Sean Diaz, Director of Corporate Accounting, and Joe Repice, Director of Smartphone Product Strategy,[4] claiming they had knowledge regarding "U.S. sales and finance of the accused Samsung products" (Samsung Galaxy S8 and S9 phones) which also happen to be Accused Products in this case among others. *Compare* Ex. 15 *with* Pl.'s Compl. ¶¶ 21, 58, ECF No. 1. Neither were identified by either Samsung entity in responding to LWS's discovery requests asking for such information.

Further independent research revealed additional current and former employees of Samsung in Texas with knowledge of the accused products. For example, Drew Blackard, Vice President of Mobile Product Management at SEA who "[c]urrently lead[s] Samsung's Smartphone Product Management team . . . for the Galaxy S, Note, Z Series & A Series brands." Ex. 16. All but the Z Series are accused products in this case. Blackard has been with Samsung for over 12 years and his experience includes: 1) leading the product management team, including product marketing, product experience, product planning, and launch operations for at least three of the accused products; 2) overseeing profits and losses, forecasting, promotion planning, and revenue and market share goals; and 3) developing market strategies for the accused products including pricing. *Id.* Blackard is located in Dallas. *Id.*

Additionally, Lance Bierwirth, located in Dallas, was a Samsung employee for over six years. Ex. 17. As the Head of Product Strategy and Planning, he was

---

[4] Samsung Disclosures at 6–7, Ex. 12; Ex. 13 (LinkedIn profiles attached to Solas's response). Currently, Director of Corporate Accounting and Director of Smartphone Product Strategy, respectively. Ex. 14 (current LinkedIn profiles).

responsible for bringing at least one of the accused products to market, Galaxy Tab S7+, which included analyzing the market and the realized revenue. *Id.*

## II. ARGUMENT & AUTHORITIES

"A plaintiff's selection of venue is entitled to deference." *eRoad Ltd. v. PerDiemCo LLC*, 2019 WL 10303654, at *4 (W.D. Tex. Sep. 19, 2019). Specifically, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). While a court "may 'consider undisputed facts outside the pleadings, . . . it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'" *SynKloud Techs., LLC v. Dropbox, Inc.*, 2020 WL 2494574, at *2 (W.D. Tex. May 14, 2020) (citation omitted). Here, four factors weigh against transfer, two slightly favor transfer, and the rest are neutral. Accordingly, weighed in the balance, the factors do not favor transfer.

**A. The private interest factors weigh heavily against transfer.**

**1. The relative ease of access to sources of proof weighs against transfer.**

Samsung argues NDCA is more convenient for this factor because 1) Samsung's documents are in South Korea; 2) SSI, who supplies the stand-along LEDs accused ███████████████████████████████████████████████████ ██████████████████████████████████████ is headquartered in NDCA though it also has employees in WDTX; 3) Samsung provided a long list of current and former Lumileds employees that may have knowledge of prior-art products identified in Samsung's invalidity contentions; and 4) a small portion of the accused products are manufactured by suppliers ███████, and Samsung specifically identifies ███████ ███████████████████████████████████████████████████████████ without any analysis or evidence in support. Mot. at 9 (emphasis added).

Despite what Samsung argues in its motion, "witnesses are not sources of proof

to be analyzed under this factor." *Kuster v. W. Digital Techs.*, 2021 WL 466147, at *2 (W.D. Tex. Feb. 9, 2021). Only documents and physical evidence are considered. *Id.* at *3. Instead, Samsung relies on speculative, nonspecific assertions for possible relevant prior-art documents from third parties while neglecting to mention its Plano location which undoubtedly stores relevant sales and financial information.

Notably, other than the statement that SSI maintains sales-related documents for a small subset of the accused products, Samsung does not identify any specific types of documents (physical or electronic) in or around NDCA. Samsung did not issue discovery to these supposedly highly relevant prior art witnesses or ███████ to determine what relevant documents they might have and where they are kept. Such speculative assertions are insufficient. *See Kuster*, 2021 WL 466147, at *3 (holding that nonspecific references to copies of documents that may exist is not sufficient evidence to support this factor).

On the other hand, LWS discovered, through its own research, that Samsung's Plano location, by Samsung's own statements, has several witnesses with relevant knowledge as to the Accused Products despite their nondisclosure in this lawsuit. Because these witnesses' relevant knowledge includes, according to Samsung, sales and financial information for the accused products, it stands to reason that at least some of those documents for the accused products (multiple Samsung phones, tablets, and possibly televisions) are stored at or accessible from the Plano location. Exs. 11–16; *see also* Ex. 8 (noting it is the location of Samsung's "headquarters for its sales operation"); *see supra* n. 3 (noting STA, the sales subsidiary of Samsung, was merged into SEA). For example, Diaz and Repice, who Samsung has identified as having relevant knowledge, as well as Blackard are all located in the Dallas area and likely have access to relevant documents consistent with their relevant knowledge of the Accused Products. *See supra* 5–6.

That Samsung has relevant documents to this Accused Products in this case is

confirmed by one of Samsung in one of its multiple prior attempts to transfer other cases to Austin on convenience grounds. *See infra* at 13.   In the *STC.UNM vs. Samsung, et al.* case, Samsung submitted a declaration from Sean Diaz (the same person identified in the *Solas* case as having relevant knowledge of some of the same accused products as those in this case). Ex. 34; *supra* at 5; Exs. 12–13. In his declaration, Diaz confirmed that SEA markets and sells consumer electronics in the United States, including smartphones and tablets like the ones accused in this case. Ex. 34 at 2–3. Additionally, he noted that SEA's offices in "New Jersey, Plano, [Texas] and Coppell[, Texas] maintain records relating to SEA's business activities in the United States" including marketing and sales activities. *Id.* at 3.

Plaintiff's general counsel, Adam Reed, resides in Dallas, Texas. Reed has access to documents related to Plaintiff, including origination and ownership of the Patents-in-Suit.

To the extent the Court does consider the nonspecific, speculative nature of the sources of proof Samsung identified related to prior art or suppliers, any such consideration is balanced out by prior art witnesses located in this District. For instance, Samsung identified multiple publications[5] from Osram, "a global leader in optical solutions", in its Preliminary Invalidity Contentions. Ex. 18. In 2018, Osram added a subsidiary, Fluence Bioengineering, Inc., in Austin, Texas which specializes in design, manufacture, and distribution of LED lighting technologies in the horticultural industry. *Id.*; Ex. 19. Osram, individually, and its subsidiary, lists several job openings in Texas, including within this District. Ex. 20.

Because of Samsung's extensive presence in Texas and this District, including sales and financial information for several accused products (Samsung Galaxy Tab, S, Note, and A Series brands) rather than just a few stand-alone LEDs, as well as

---

[5] Bates-stamped SAMSUNG-LWS00000205 and SAMSUNG-LWS000001091.

Plaintiff's documents in Dallas, this factor weighs slightly against transfer.

### 2. The relevant, material non-party witness is located within this Court's subpoena range.

Samsung's long list of potential third-party, prior-art witnesses is entitled to little weight and is outweighed by a third-party witness with relevant knowledge to this case as this witness worked on developing and launching one of the accused products.

Samsung contends this factor "weighs strongly in favor" of transfer because it provided a list of current and former employees of Philips Lumileds and because ███ ████████████████████████████████████████████████ with no evidence of the ████████ relevance or connection to this case other than ████████████████████████ ████████ .

As to the first, long lists of potential witnesses, in particular third-party, prior-art witnesses, are given little weight. *Solas*, 2020 WL 3440956, at *4; *East Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 28559065 at *4 (E.D. Tex. Feb. 15, 2017). As to Samsung's second basis, Samsung makes no attempt to demonstrate why ████████████████████████ would be relevant witnesses in this dispute. *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021) (holding the district court must "assess the relevance and materiality of the information the witness[es] may provide." (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). Samsung's statement that ████████████ ████████████████████████████████████████ carries zero weight. *Id.*; *Solas*, 2020 WL 3440956, at *4.

Furthermore, again relying on its own independent research, Plaintiff discovered at least one former Samsung employee with relevant, material knowledge of one of the accused products. Lance Bierwirth spent more than six years at Samsung, concluding as the Head of Product Strategy & Planning for Mobile

Computing. Ex. 17. This role included bringing at least one of the accused products to market, Galaxy Tab S7+, which included analyzing the market for the accused product and the realized revenue. *Id.* A witness with actual knowledge of the design, development, market, and revenue for an accused product far outweighs the relevance and materiality of a list of prior art witnesses few, if any, of which would testify at trial. *See Solas*, 2020 WL 3440956, at *4.

Witnesses may be subpoenaed (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). And subpoenas requiring traveling of up to 160 miles are routinely upheld under Rule 45's provisions.[6] Because Bierwirth is in Dallas and thus, approximately 100 miles, he is within this Court's subpoena power but not the subpoena power of the NDCA. Balancing the number of prior-art witnesses against the more relevant, material witness (Bierwirth) this factor weighs slightly against transfer.

### 3. The identified willing witnesses are predominantly located closer to this District than NDCA.

The most important factor in the transfer analysis—"the convenience of the witnesses"—also weighs heavily against transfer. *In re Genentech, Inc.*, 566 F.3d at 1342. Samsung argues this factor weighs heavily in favor of transfer because of 1) the unidentified witnesses for Samsung and SSC are in South Korea and, 2) the single specifically identified potentially relevant witness for SSI who is located in NDCA. Mot. at 13–14. Relying on such nonspecific, unverifiable assertions is insufficient.

---

[6] Numerous courts have refused to find "substantial expense" despite evidence that witnesses may be required to travel up to 160 miles. *Eakin v. Rosen*, 2015 WL 8757062, at *10 (S.D. Ga. Dec. 11, 2015) (122 miles); *N5 Techs., LLC v. Bank of Am., N.A.*, 2014 WL 558762, at *4 (E.D. Tex. Feb. 10, 2014) (160 miles).

*Solas*, 2020 WL 3440956, at *4. Even worse, in addition to failing to carry their burden in the Motion, Samsung also failed to identify the alleged witnesses with relevant knowledge relied on for this Motion. Ex. 22, SEC's Ans and Suppl Ans to ROGs #1. Instead, Samsung echoed the same conclusory statements that all relevant witnesses are in South Korea and none are in NDCA or WDTX.

Although Samsung identified one relevant, willing witness, the convenience of that witness (and all the undisclosed witnesses relied upon for that matter) is outweighed by the several party witnesses that LWS found on its own.

First is Drew Blackard, Vice President of Mobile Product Management at SEA who leads "Samsung's Smartphone Product Management team" for at least three of the accused products, the Galaxy S, Note, and A Series brands. Ex. 16. As discussed in Section II.B., Blackard has been with Samsung for over 12 years and has extensive experience related to the accused products including product development, marking, launch, profits, pricing, and market share, among others. *Id.*

Second, are the two witnesses, Sean Diaz and Joe Repice, that Samsung *itself* has recently disclosed as being witnesses with relevant knowledge regarding "U.S. sales and finance" for the Samsung Galaxy S8 and S9 phones which are two of the Accused Products in this case. *See supra* at 5. Indeed, Diaz is so knowledgeable that Samsung has even used him recently as a declarant in support of transferring a case to Austin based on convenience. Ex. 34.

Finally, Adam Reed, Plaintiff's general counsel, resides in Dallas and it would be substantially less convenient to fly to California and drive to the courthouse instead of a one-and-a-half-hour drive to this Court. Reed has relevant knowledge of Plaintiff, including origination and ownershiprelated to the Patents-in-Suit.

Accordingly, because there are four relevant, party witnesses that have been identified less than a two-hour drive to this Court, this factor weighs against transfer.

**4. As a result of Samsung's delay and Samsung's Co-Defendant, judicial economy strongly weighs against transfer.**

Judicial economy and other "practical matters . . . that make a trial easy, expeditious, and inexpensive" weigh against transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). Samsung's delay leads to this factor weighing strongly against transfer. Ex. 22, *Monarch Networking Sols. LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00015-JRG, at 20 (E.D. Tex. Jan. 7, 2021).

Samsung waited more than eight months from the filing of the Complaint before filing the instant Motion. In that time, this case has substantially progressed in the following ways: 1) the four parties served preliminary infringement and invalidity contentions, 2) Samsung filed a motion to dismiss on substantive issues, 3) all three defendants' filed answers, 4) the parties agreed to, and the Court entered a schedule with a trial date in February 2023, 5) the parties litigated SSC's motion to intervene, 6) the parties exchanged proposed claim terms and proposed constructions, and 7) met and conferred on narrowing the list of claim terms. Additionally, the parties have now fully briefed claim construction (2 briefs each), filed a joint claim construction statement, and are preparing for the *Markman* hearing.

Samsung did not raise the issue of inconvenience or moving the transfer at any point in that more than eight-month window. Notably, when SSC moved to intervene, SSC explicitly conditioned its intervention on being available to litigate in this Court and committed that "it will not seek transfer if permitted to intervene" in order to avoid delaying the litigation. ECF No. 23. at 12; SSC Reply Br. at 2, ECF No. 2. Samsung did not oppose the motion or file a response.

Indeed, it wasn't until November 26, 2021, a few days after announcing it would be building a new $17 billion facility in this District, before Samsung filed the instant Motion. Ex. 3.

Transferring the case now would "largely obviate all the resources expended" toward claim construction as well as many other tasks that would be relitigated. Ex.

12

22 at 22. The Fifth Circuit has stated "[p]arties seeking a change of venue should act with 'reasonable promptness.'" *Peteet v. Dow Chem Co.*, 868 F.2d 1428, 1346 (5th Cir. 1989); *see also Utterback*, 716 F. App'x at 245 ("Utterback insists the timing of his motion is immaterial to the 1404(a) analysis. Our caselaw suggests the opposite."). It logically flows that the "longer a litigant waits to file a transfer motion, the more resources [will be unnecessarily expended by] the parties and the Court . . . [and] the less convenient transfer would be." Ex. 22 at 22. Furthermore, on multiple occasions, Samsung has sought transfer to the Austin Division taking the position that this District *is*, in fact, convenient. Exs. 23–26, 33–34[7]. Yet now, Samsung argues the opposite.

In one of Samsung's multiple attempts to transfer a case to Austin, it filed multiple declarations in support. Exs. 33–34. One of the declarations is from Kyeong Yu a Senior Director at SSI in San Jose who testified that SSI has three offices in Texas (two in this District), it contracts with warehouse vendors including two in this District, and SSI employees and documents in Austin, Texas related to the accused products (which include smartphones and tablets that make up the Accused Products in this case). Ex. 33. Samsung also submitted a declaration from Sean Diaz of SEA to support an intra-district convenience transfer to Austin because the accused products (including smartphones and tablets like what are accused in this case) are manufactured in Korea or Austin, and that SEA's relevant employees and documents would be in Austin or Dallas area, not Waco. Ex. 34 at 2–3.

Additionally, transferring the Samsung case would result in two cases, involving the exact same functionality, being litigated in two different forums. The case against Seoul Semiconductor involves LEDs that are supplied to Samsung and incorporated into the accused products. ECF No. 23 at 2. Seoul has also represented

---

[7] *See also* 6:21-cv-00398 (this motion is sealed and a redacted copy has not yet been filed with the Court).

13

that it possesses the best evidence related to accused infringement of these products. Principles of comity among federal courts and judicial efficiency weigh in favor of resolving the disputes between Samsung and Seoul in the same forum. *See In re Supercell Oy*, 806 F. App'x 1000, 1001–02 (Fed. Cir. 2020).

Accordingly, based on Samsung's delay and prior conduct arguing this District *is* convenient, judicial economy strongly weighs against transfer.

## B. The private interest factors weigh against transfer.

### 1. The time to trial is shorter, and consistently has been, in this District than in the Northern District of California.

Although "the speed of the transferee district court should not alone outweigh [the] other factors," *In re Genentech*, 566 F.3d at 1347, a faster time to trial means "more efficient and economical resolutions of the claims at issue." Ex. 27, *BillJCo, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA, at 17 (W.D. Tex. Feb. 1, 2022). The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347. If the present court has a faster average time to trial, transfer is disfavored. *EcoFactor*, 2021 WL 1535414, at *6. The average time to trial in NDCA is 30.9 months versus this Court's 25.5 months. Ex. 28. Furthermore, that this District has a quicker time-to-trial is not a one-time occurrence making this factor less speculative. Over the last 6 years, in only four of the quarterly reports (out of a total of 24) did the NDCA average a quicker time to trial for civil cases. Exs. 29–32. Additionally, transferring the case now, in particular after Samsung's delay, would further delay trial. As such, this factor weighs against transfer.

### 2. The local interest factor strongly weighs against transfer.

Samsung's extensive and long-standing presence in Texas makes the local interest factor strongly weigh against transfer.

Samsung boldly argues this District has "No Local Interest" and contends the

state of "California has a strong interest in adjudicating disputes that involve businesses with operations in California, like SEA, SSI, SSC, ███████████████ ██████" Mot. at 15.

As evidence of Samsung's strong connection with Texas and this District, it has 1) committed more than $24 billion in past and future real-estate developments to this District alone (Exs. 2 and 3); 2) maintains a large office in Plano, Texas less than two hours from this Court (Exs. 7, 8, and 10); 3) employs thousands in this state and in this District including SEA's largest presence of any of its locations (Exs. 2 and 7); 4) has received billions in incentives from cities within this District for said real-estate developments (Ex. 4); and, 5) on multiple occasions, referred to this District as its "home" and expressed its connection to the District as being part of the "fabric of the community." (Exs. 5 and 3). Indeed, job openings on Samsung's website show that the Austin facility has the most opening of any Samsung location and more than double second place. Ex. 21. Second place happens to be Samsung's Plano facility which is also more than double the next place. *Id.* Samsung's Austin location makes the chips that are built into the accused products and Samsung's Plano location has multiple, material witnesses directly relevant to this litigation. Samsung's position is disingenuous at best.

Samsung cannot hide its extensive presence in this District and state. Accordingly, this factor strongly weighs against transfer. Ex. 27 at 19.

### 3. The remaining factors are neutral.

The parties agree that the remaining factors, familiarity with governing laws and conflict of laws, are neutral.

## III. CONCLUSION

Considering all the factors, Samsung has not met its burden to show that California is the clearly more convenient venue. Indeed, the balance of the factors weighs against transfer.

Dated: March 14, 2021

Respectfully Submitted,

/s/ Bradley D. Liddle
E. Leon Carter
lcarter@carterarnett.com
Texas Bar No. 03914300
Bradley D. Liddle
bliddle@carterarnett.com
Texas Bar No. 24074599
Scott W. Breedlove
sbreedlove@carterarnett.com
State Bar No. 00790361
Joshua J. Bennett
jbennett@carterarnett.com
Texas Bar No. 24059444
Nathan Cox
ncox@careterarnett.com
Texas Bar No. 24105751
CARTER ARNETT PLLC
8150 N. Central Expy, 5th Floor
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

Erick S. Robinson
erobinson@porterhedges.com
Texas Bar No. 24039142
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone No. (713) 226-6615
Facsimile No. (713) 226-6215

**ATTORNEYS FOR
PLAINTIFF LED WAFER
SOLUTIONS, LLC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by email via the Western District of Texas ECF System to all counsel of record on this the 14th day of March, 2022.

*/s/ Nathan Cox*
Nathan Cox