Exhibit JJ

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LED WAFER SOLUTIONS LLC, | |
| Plaintiff, | Civil Action No. 6:21-cv-00292-ADA |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| SEOUL SEMICONDUCTOR CO., LTD., | |
| Intervenor-Defendant. | |

## <u>DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.'S NOTICE OF SUBPOENA TO LUMILEDS LLC</u>

Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), by and through their undersigned counsel, hereby give notice that a subpoena to produce documents is being served on nonparty Lumileds LLC ("Lumileds"), attached as Exhibit A.

Dated: March 25, 2022

By:   /s/ Benjamin N. Luehrs

Brian C. Nash (State Bar No. 24051103)
Email: brian.nash@pillsburylaw.com
Austin M. Schnell (State Bar No. 24095985)
Email: austin.schnell@pillsburylaw.com
PILLSBURY          WINTHROP          SHAW
PITTMAN LLP
401 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 580-9629

John M. Desmarais (*pro hac vice*)
Email: jdesmarais@desmaraisllp.com
Cosmin Maier (*pro hac vice*)
Email: cmaier@desmaraisllp.com
Yung-Hoon Ha (*pro hac vice*)
Email: yha@desmaraisllp.com
Benjamin N. Luehrs (State Bar No. 440317)
Email: bluehrs@desmaraisllp.com
Frederick J. Ding (State Bar No. 5651633)
Email: fding@desmaraisllp.com
Alexandra E. Kochian (*pro hac vice*)
Email: akochian@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

Exhibit A

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas ▢ ▾

| | | |
|---|---|---|
| LED Wafer Solutions LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   6:21-cv-00292-ADA |
| Samsung Electronics Co., Ltd., Samsung Electronics America Inc., and Seoul Semiconductor Co., Ltd. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Lumileds LLC c/o Corporation Service Company Which Will Do Business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Desmarais LLP<br>101 California Street, Suite 3070<br>San Francisco, CA 94111 | Date and Time:<br><br>04/08/2022 6:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/25/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /Benjamin N. Luehrs/ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Defendants
Samsung Electronics Co., Ltd. and Samsung Electronics America Inc.   , who issues or requests this subpoena, are:
Benjamin N. Luehrs, 230 Park Avenue, New York, NY 10169, bluehrs@desmaraisllp.com, (212) 808-2952

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   6:21-cv-00292-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Attachment A

## ATTACHMENT A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") request that nonparty Lumileds LLC ("Lumileds") produce the documents and things requested below. The requested documents and things must be produced on or before April 8, 2022 at the offices of Desmarais LLP, 101 California Street, Suite 3070, San Francisco, California, 94111, or at such other time and place as may be mutually agreed upon in writing.  A copy of the Interim Protective Order entered in this action for the protection of any requested proprietary, confidential, or commercially sensitive information (*see* page 5 of Judge Albright's Standing Order Governing Proceedings (OGP) 4.0—Patent Cases) is attached hereto as Attachment B.

## DEFINITIONS AND INSTRUCTIONS

1.     As used herein, "You," "Your," and "Lumileds" means Lumileds LLC, and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

2.     As used herein, "Samsung" or "Defendants" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

3.     As used herein, "LED Wafer" or "Plaintiff" means LED Wafer Solutions LLC and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters,

divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

4.      As used herein, "Action" means the action under the caption *LED Wafer Solutions LLC v. Samsung Electronics Co., Ltd., et al.*, Civil Action No. 6:21-cv-00292-ADA in the United States District Court for the Western District of Texas, Waco Division.

5.      As used herein, "Patents-in-Suit" means United States Patent Nos. 8,941,137 (the "'137 patent"), 8,952,405 (the "'405 patent"), 9,502,612 (the "'612 patent"), and 9,786,822 (the "'822 patent").

6.      As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

7.      As used herein, "any" and "all" shall be construed to mean "each and every," so as to acquire the broadest possible meaning.

8.      As used herein, "each" and "every" mean "each and every."

9.      As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

10.     As used herein, "document" has the same broad meaning as in Rule 34 of the Federal Rules of Civil Procedure.  The term "document" also encompasses tangible things.

11.     As used herein, "person" means any natural person or any business, legal, or governmental entity or association.

12.     As used herein, "earlier version" means any draft, revision, or version, whether or not published, created prior to the publication date of a particular document.

13.     As used herein, "related" or "relating" to any given subject means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting,

constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified.

14.     As used herein, "identify" as applied to an event means to provide a description of the event, the date of the event, the location of the event, and the individuals and entities participating in the event.

15.     As used herein, the singular of any word shall include the plural, and the plural shall include the singular.

16.     Pursuant to the requests herein, You are to produce any and all relevant documents within the possession, custody, or control of Lumileds, including documents located in the files of any and all past and present association members, subsidiaries, parents, sisters, partnerships, directors, officers, agents, representatives, employees, attorneys, and accountants of Lumileds.

17.     Produce each document in its entirety, without deletions, redactions, or exclusions, regardless of whether you deem part of a document outside of the scope of the requests.

18.     Produce documents that identify the file or other source in which each document responsive to these requests is found or keep a record of such information.

19.     Documents from any single file should be produced in the same order as they were found in such file, including any labels, files, folders, and/or containers in which such documents are located or with which such documents are associated.  If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the originals.

20.     All documents that constitute electronically stored information, with that term having the meaning ascribed to it by the Federal Rules of Civil Procedure, shall be produced in an intelligible format.

21.     If a document once existed, but has been lost, destroyed, erased, or otherwise is no longer in your possession, identify the document and state the details concerning the loss or destruction of such document, including the name and address of the present custodian of any such document known to You.

22.     If, after conducting a reasonable investigation, a full answer cannot be provided for any request for the production of documents, state that such is the case and answer to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, and what efforts were made to obtain the unavailable documents or information.

23.     If any of the documents requested herein are no longer in Your possession, custody, or control, identify for each such document the date, the type of the document, any senders and recipients, and any persons receiving any copies of each such document, and provide a summary of each such document's pertinent contents.

24.     If any document responsive to these requests has been destroyed, describe the contents of the document, identify the location of any copies of the document, and the date of destruction of the document.

25.     If any document is withheld on a claim of attorney/client privilege or work product immunity, provide a detailed privilege log that describes the nature and basis for your claim and the subject matter of the document withheld, in a manner sufficient to disclose facts upon which You rely in asserting your claim and to identify the grounds and reasons for withholding the document.  Such description should, at a minimum, include the date of the withheld document, an identification of each and every author of the document, an identification of each and every person who received the document, an identification of each and every person from whom the document

4

was received, a description of the subject of the document, and further information relating to the document sufficient to explain the claim of privilege or immunity and to permit the adjudication of the propriety of that claim.

26.     The document requests herein shall be deemed continuing, and it is requested that Lumileds provide supplemental responses and production as additional information or documents become available, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

27.     If a document is in a language other than English and an English translation exists, provide both documents.

## REQUESTED DOCUMENTS

1.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon Rebel White LED (for example, the device described in the LUXEON Rebel General Purpose White Portfolio Technical Datasheet DS64, attached here as Exhibit 1, the LUXEON Rebel White LEDs webpage, attached here as Exhibit 2, and the System Plus Consulting Reverse Costing Analysis: Philips Lumileds Luxeon Rebel Warm White (Ref. LXML-PWW1-XXXX), attached here as Exhibit 3) that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

2.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to the Lumileds Luxeon Rebel White LED that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

3.     Documents sufficient to show that the Lumileds Luxeon Rebel White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009 (including, for example, product catalogs, announcements, invoices, and sales records).

4.     Documents sufficient to show the use of open thermal vias, thermal vias, and/or thermal pads in connection with the Lumileds Luxeon Rebel White LED (as described in, for example, the LUXEON Rebel Assembly and Handling Information Application Brief AB32, attached here as Exhibit 4).

5.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon

6

III White LED (for example, the device described in the Luxeon III Emitter Technical Datasheet DS45, attached here as Exhibit 5) that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

6.      Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to the Lumileds Luxeon III White LED that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

7.      Documents sufficient to show that the Lumileds Luxeon III White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009 (including, for example, product catalogs, announcements, invoices, and sales records).

8.      Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon Flash White LED (for example, the device described in the Luxeon Flash Technical Datasheet DS49, attached here as Exhibit 6) that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

9.      Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to the Lumileds Luxeon Flash White LED that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

10.     Documents sufficient to show that the Lumileds Luxeon Flash White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009 (including, for example, product catalogs, announcements, invoices, and sales records).

11.     Documents sufficient to show and describe the Lumileds flip-chip light-emitting diode (FCLED) technology (for example, the technology described in High-power AlGaInN flip-chip light-emitting diodes, attached here as Exhibit 7, and in Figure 1(b) of Evolutionary new chip design targets lighting systems, attached here as Exhibit 8).

12.     Documents sufficient to show and describe the Lumileds thin-film flip-chip light-emitting diode (TFFC LED) technology (for example, the technology described in High performance thin-film flip-chip InGaN-GaN light-emitting diodes, attached here as Exhibit 9, and in Figure 1(a) of Evolutionary new chip design targets lighting systems, attached here as Exhibit 8).

13.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds white LEDs that were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States between 2005 and March 6, 2011 (such as the Luxeon I, Luxeon K2, Luxeon c, Luxeon V, SuperFlux, SnapLED, and Luxeon Altilon).

14.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds white LEDs that were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States between 2005 and March 6,

2011 (such as the Luxeon I, Luxeon K2, Luxeon c, Luxeon V, SuperFlux, SnapLED, and Luxeon Altilon).

15.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2010/0019260 to Epler, attached here as Exhibit 10.

16.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2010/0019260 to Epler.

17.     Documents sufficient to show that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2010/0019260 to Epler were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before March 6, 2011 (including, for example, product catalogs, announcements, invoices, and sales records).

18.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2009/0173956 to Aldaz, attached here as Exhibit 11.

19.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2009/0173956 to Aldaz.

20.     Documents sufficient to show that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2009/0173956 to Aldaz were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before March 6, 2011 (including, for example, product catalogs, announcements, invoices, and sales records).

21.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 8,384,118 to Schiaffino, attached here as Exhibit 12.

22.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 8,384,118 to Schiaffino.

23.     Documents sufficient to show that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 8,384,118 to Schiaffino were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before March 6, 2011 (including, for example, product catalogs, announcements, invoices, and sales records).

24.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 7,419,839 to Camras, attached here as Exhibit 13.

10

25.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 7,419,839 to Camras.

26.     Documents sufficient to show that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 7,419,839 to Camras were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009 (including, for example, product catalogs, announcements, invoices, and sales records).

27.     Documents sufficient to identify and describe the structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2011/0018013 to Margalith, attached here as Exhibit 14.

28.     Product release packages, specifications, cross-sectional diagrams, schematics, data sheets, product requirement documents, design documents, manuals, guides, brochures, white papers, and presentations relating to Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2011/0018013 to Margalith.

29.     Documents sufficient to show that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2011/0018013 to Margalith were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before March 6, 2011 (including, for example, product catalogs, announcements, invoices, and sales records).

11

30.   Documents sufficient to identify the Lumileds product corresponding to the "Lumileds HP FCLED" from Figure 2 ("Lumileds' HP FCLED on a Si submount") and Figure 3 ("Lumileds' HP FCLED is in volume production") of 3D LED and IC wafer level packaging, attached here as Exhibit 15.

31.   The following documents, and any earlier versions thereof:

a.   LUXEON Rebel General Purpose White Portfolio Technical Datasheet DS64, attached here as Exhibit 1;

b.   LUXEON Rebel White LEDs webpage, available at https://web.archive.org/web/20100717010601/http://www.philipslumileds.com:80/products/luxeon-rebel/luxeon-rebel-white, attached here as Exhibit 2;

c.   LUXEON Rebel Assembly and Handling Information Application Brief AB32, attached here as Exhibit 4;

d.   Luxeon III Emitter Technical Datasheet DS45, attached here as Exhibit 5;

e.   Luxeon Flash Technical Datasheet DS49, attached here as Exhibit 6;

f.   High-power AlGaInN flip-chip light-emitting diodes, authored by J.J. Wierer, D.A. Steigerwald, M.R. Krames, J.J. O'Shea, M.J. Ludowise, G. Christenson, Y.C. Shen, C. Lowery, P.S. Martin, S. Subramanya, W. Götz, N.F. Gardner, R.S. Kern, and S.A. Stockman, published in Applied Physics Letters (May 28, 2001), attached here as Exhibit 7;

g.   Evolutionary new chip design targets lighting systems, authored by Oleg Shchekin and Decai Sun, published in Compound Semiconductor (Mar. 2007), attached here as Exhibit 8;

h. High performance thin-film flip-chip InGaN-GaN light-emitting diodes, authored by O.B. Shchekin, J.E. Epler, T.A. Trottier, T. Margalith, D.A. Steigerwald, M.O. Holcomb, P.S. Martin, and M.R. Krames, published in Applied Physics Letters (2006), attached here as Exhibit 9;

i. LUXEON Rebel and LUXEON Rebel ES Assembly and Handling Information Application Brief AB32, attached here as Exhibit 16;

j. Luxeon Line Technical Data DS21, attached here as Exhibit 17;

k. LUXEON Rebel webpage, available at https://web.archive.org/web/20080928104759/http://www.philipslumileds.com/products/luxeon/luxeonrebel, attached here as Exhibit 18; and

l. PHILIPS Current State of the Art in High Brightness LEDs, authored by M. George Craford, presented at the American Physical Society Solid State Lighting Session (Mar. 6, 2007), attached here as Exhibit 19.

Attachment B

**FILED**

March 07, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
Reuben Amaro
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

## STANDING ORDER GOVERNING PROCEEDINGS (OGP) 4.0—PATENT CASES

This OGP governs proceedings in all patent cases pending before the undersigned and takes effect upon entry in all patent cases, except where noted. If there are conflicts between this OGP and prior versions in existing cases that the parties are unable to resolve, the parties are encouraged to contact the Court for guidance via email to the Court's law clerk.

Parties should generally email any inquiries to the Court's law clerk. The Court's voicemail is not checked regularly. Email is the preferred contact method.

Email for the Court's law clerk: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov.

## I.   GENERAL DEADLINES

The following deadlines apply:

1. Patent cases shall be set for a Rule 16 Case Management Conference (CMC) in accordance with the Court's Standing Order Regarding Notice of Readiness in Patent Cases.

2. Not later than 7 days before the CMC. The plaintiff shall serve preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. The plaintiff shall also identify the priority date (*i.e.* the earliest date of invention) for each asserted claim and produce:  (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit.

3. Two weeks after the CMC. The parties shall file a **motion** to enter an agreed Scheduling Order that generally tracks the exemplary schedule attached as Exhibit A to this OGP, which should suit most cases. If the parties cannot agree, the parties shall submit a joint motion for entry of a Scheduling Order briefly setting forth their scheduling disagreement. Absent agreement of the parties, the plaintiff shall be responsible for the timely submission of this and other joint filings. When filing any Scheduling Order, the parties shall also jointly send an editable copy to the Court's law clerk.

4. Seven weeks after the CMC. The defendant shall serve preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the defendant contends are directed to ineligible subject matter under section 101. The 101 contention shall (1) identify the alleged abstract idea, law of nature, and/or natural phenomenon in each challenged claim; (2) identify each claim element alleged to be well-understood, routine, and/or conventional; and (3) to the extent not duplicative of 102/103 prior art contentions, prior art for the contention that

claim elements are well-understood, routine, and/or conventional. The defendant shall also produce (1) all prior art referenced in the invalidity contentions, and (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s).[1]

## II.    DISCOVERY

Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery shall be stayed until after the *Markman* hearing. Notwithstanding this general stay of discovery, the Court will permit limited discovery by agreement of the parties, or upon request, where exceptional circumstances warrant. For example, if discovery outside the United States is contemplated, the Court is inclined to allow such discovery to commence before the *Markman* hearing.

Following the *Markman* hearing, the following discovery limits apply. The Court will consider reasonable requests to adjust these limits should circumstances warrant.

1. Interrogatories:  30 per side[2]
2. Requests for Admission:  45 per side
3. Requests for Production:  75 per side
4. Fact Depositions:  70 hours per side (for both party and non-party witnesses combined)
5. Expert Depositions:  7 hours per report[3]

**Electronically Stored Information**. As a preliminary matter, the Court will not require general search and production of email or other electronically stored information (ESI), absent a showing of good cause. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall contact the Court to discuss their respective positions.

## III.    DISCOVERY DISPUTES

**Procedure.** A party may not file a Motion to Compel discovery unless: (1) lead counsel have met and conferred in good faith to try to resolve the dispute, and (2) the party has contacted the Court's law clerk to summarize the dispute and the parties' respective positions. When

---

[1] To the extent it may promote early resolution, the Court encourages the parties to exchange license and sales information, but any such exchange is optional during the pre-*Markman* phase of the case.

[2] A "side" shall mean the plaintiff (or related plaintiffs suing together) on the one hand, and the defendant (or related defendants sued together) on the other hand. If the Court consolidates related cases for pretrial purposes, with regard to calculating limits imposed by this OGP, a "side" shall be interpreted as if the cases were proceeding individually. For example, in consolidated cases the plaintiff may serve up to 30 interrogatories on each defendant, and each defendant may serve up to 30 interrogatories on the plaintiff.

[3] For example, if a single technical expert submits reports on both infringement and invalidity, he or she may be deposed for up to 14 hours in total.

2

contacting the Court's law clerk for discovery or procedural disputes, the following procedures shall apply.

If the parties remain at an impasse after lead counsel have met and conferred, the requesting party shall email a summary of the issue(s) and specific relief requested to all counsel of record. The summary of the issue shall not exceed 500 words for one issue or a combined 1000 words for multiple issues. The responding party has three business days thereafter to provide an email response, also not to exceed 500 words for one issue or a combined 1000 words for multiple issues. The specific relief requested should propose the exact language to be issued in a court order for each part of every disputed issue. The specific relief requested does not count toward word limits. The Court encourages the parties to provide their submission in a table format which identifies the disputed issues and specific relief requested.

Example:

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| RFP 1: All sale records of the Product. | Responding Party didn't produce anything. Responding Party keeps its sales records in a sales database.<br><br>Relief: Order that "Responding Party must produce a copy of the sales database within 7 days." | We found no sales records of the Product in the sales database.<br><br>Relief: Find that "no documents responsive to RFP 5 exist" and deny Requesting Party's relief. |
| ROG 5: Identify all employees who worked on the Product. | Responding Party only identified a subset of the employees.<br><br>Relief: Order that "Responding Party is compelled to fully respond to ROG 5 by identifying the names and locations of the remaining employees who worked on Product by [date]." | We identified the relevant employees. The other employees are not relevant, and it is too burdensome to identify every employee.<br><br>Relief: Order that "Responding Party need not identify any other employees in response to ROG 5." |

Once the opposing party provides its response, the requesting party shall email the summaries of the issues to the Court's law clerk with opposing counsel copied. If a hearing is requested, the parties shall indicate in the email whether any confidential information will be presented. Thereafter, the Court will provide guidance to the parties regarding the dispute or arrange a telephonic or Zoom hearing. The hearing shall proceed in the sequence of issues charted.

**<u>Written Order.</u>**[4] Within 7 days of the discovery hearing, the parties shall email a jointly proposed order to the Court's law clerk that includes the summaries of the issues, relief

---

[4] This supersedes June 17, 2021 Standing Order for Discovery Hearings in Patent Cases.

OGP Version 4.0

requested, and the parties' understanding of the Court's ruling. If one party disputes the language of the order, then that party shall send an editable version of the proposed order to the Court's law clerk with the disputed language in tracked changes.

## IV.   VENUE DISCOVERY

The Court hereby establishes the following presumptive limits on discovery related to venue and jurisdiction: each party is limited to 5 interrogatories, 10 Requests for Production, and 10 hours of deposition testimony. The time to respond to such discovery requests is reduced to 20 days. If a party believes these limits should be expanded, the party shall meet and confer with opposing counsel and if an impasse is reached, the requesting party is directed to contact the Court for a telephonic hearing.

Venue or jurisdictional discovery shall be completed no later than ten weeks after the filing of an initial venue motion.  Parties shall file a notice of venue or jurisdictional discovery if the discovery will delay a response to a motion to transfer.

## V.   MOTIONS FOR TRANSFER

This section applies to all cases filed on or after the effective date of this OGP. Otherwise, the Second Amended Standing Order Regarding Motions for Inter-District Transfer controls earlier-filed cases.

A motion to  transfer anywhere may be filed within three weeks after the CMC or within eight weeks of receiving or waiving service of the complaint, whichever is later. Thereafter, a movant must show good cause for any delay and seek leave of court. The deadline for plaintiff's response is two weeks after the completion of venue or jurisdictional discovery. The deadline for Defendant's reply is two weeks after the filing of the response.

The following page limits and briefing schedule apply to motions to transfer:

a.  Opening – 15 pages

b.  Response – 15 pages, due 14 days after the completion of venue or jurisdictional discovery, if such discovery is conducted; otherwise, 14 days after the Opening brief

c.  Reply – 5 pages, due 14 days after the Response brief

All parties who have filed a motion to transfer shall provide the Court with a status report indicating whether the motion has been fully briefed at each of the following times: 1) when the motion to transfer becomes ready for resolution, 2) at four weeks before the *Markman* hearing date if the motion to transfer remains unripe for resolution and 3) if there are multiple *Markman* hearings, the status report is due six weeks before the first scheduled *Markman* hearing. In addition, if by one week before the *Markman* hearing the Court has not ruled on any pending motion to transfer, the moving party is directed to email the Court's law clerk (and the technical advisor, when appointed), and indicate that the motion to transfer is pending.

If a motion to transfer to another district remains pending, the Court will either promptly resolve the pending motion before the *Markman* hearing or postpone the *Markman* hearing. Whenever a *Markman* hearing is postponed pursuant to this OGP (e.g., because the transfer motion has not yet ripened or only recently ripened), Fact Discovery will begin one day after the originally scheduled *Markman* hearing date.

## VI.   MEET AND CONFER REQUIREMENT FOR EARLY MOTIONS TO DISMISS INDIRECT AND WILLFUL INFRINGEMENT

Any party seeking to dismiss claims of indirect or willful infringement before fact discovery must first meet and confer with the opposing party to discuss dismissing those allegations without prejudice, with leave to re-plead those allegations with specificity, if supported by a good faith basis under Rule 11, within three months after fact discovery opens while permitting fact discovery on indirect and willful infringement during those three months. The party moving to dismiss must attach a certification of compliance with this OGP to its motion to dismiss.

An agreement to dismiss under this section shall be filed as a joint notice instead of as a motion.

## VII.   INTERIM PROTECTIVE ORDER

The Court provides a Model Protective Order on its website. Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information:

> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys' Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this OGP shall keep it confidential and use it only for purposes of litigating the case.

## VIII.   CLAIM CONSTRUCTION

### Limits for Number of Claim Terms to be Construed

**Terms for Construction**. Based on the Court's experience, the Court believes that it should have presumed limits on the number of claim terms to be construed. The "presumed limit" is the maximum number of terms that each side may request the Court to construe without further leave of Court. If the Court grants leave for additional terms to be construed, depending on the

5

complexity and number of terms, the Court may split the *Markman* hearing into multiple hearings.

The presumed limits based on the number of patents-in-suit are as follows:

| 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|
| 8 terms | 10 terms | 12 terms |

When the parties submit their joint claim construction statement, in addition to the term and the parties' proposed constructions, the parties should indicate which party or side proposed that term, or if that was a joint proposal.

## Briefing Procedure and Page Limits

The Court will require non-simultaneous *Markman* briefing with the following default page limits.  When exceptional circumstances warrant, the Court will consider reasonable requests to adjust these limits. These page limits shall also apply collectively for coordinated and consolidated cases; however, the Court will consider reasonable requests to adjust page limits in consolidated cases where circumstances warrant. The Court has familiarity with the law of claim construction and encourages the parties to forego lengthy recitations of legal authorities and to instead focus on the substantive issues unique to each case.

Unless otherwise agreed to by the parties, the default order of terms in the parties' briefs shall be based on 1) the patent number (lowest to highest), the claim number (lowest to highest), and order of appearance within the lowest number patent and claim. An example order may be as follows:

1.  10,000,000 Patent, Claim 1, Term 1
2.  10,000,000 Patent, Claim 1, Term 2 (where Term 2 appears later in the claim than does Term 1)
3.  10,000,000 Patent, Claim 2, Term 3 (where Term 3 appears later in the claim than does Terms 2 and 3)
4.  10,000,001 Patent, Claim 1, Term 4
5.  10,000,001 Patent, Claim 3, Term 5
6.  10,000,002 Patent, Claim 2, Term 6

If that the same or similar terms appear in multiple claims, those same or similar terms should be ordered according to the lowest patent number, lowest claim number, and order of appearance within the patent and claim.

| Brief | 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|---|
| Opening (Defendant) | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |

OGP Version 4.0

| | | | |
|---|---|---|---|
| Response (Plaintiff) | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Reply (Defendant) | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |
| Sur-Reply (Plaintiff) | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |

After briefing concludes, the parties shall file a Joint Claim Construction Statement and email an editable copy to the Court's law clerks.

### Technology Tutorials and Conduct of the *Markman* Hearing

Technology tutorials are optional, especially in cases where a technical advisor has been appointed. If the parties submit one, the tutorial should be in electronic form, with voiceovers, and submitted at least 10 days before the *Markman* hearing. In general, tutorials should be: (1) directed to the underlying technology (rather than argument related to infringement or validity), and (2) limited to 15 minutes per side. The tutorial will not be part of the record and the parties may not rely on or cite to the tutorial in other aspects of the litigation.

The Court generally sets aside one hour for the *Markman* hearing; however, the Court is open to reserving more or less time, depending on the complexity of the case and input from the parties. As a general rule, the party opposing the Court's preliminary construction shall go first. If both parties oppose the Court's preliminary construction, the plaintiff shall typically go first.

The Court will provide preliminary constructions to the parties ahead of the *Markman* hearing. At the *Markman* hearing, the Court encourages oral arguments that fine-tune the preliminary constructions over arguments repeated from the briefs.

## IX.    GENERAL ISSUES

1.  The Court will entertain reasonable requests to streamline the case schedule and discovery. Parties should contact the Court's law clerk when a change might help streamline the case.

2.  The Court is generally willing to extend the response to the Complaint up to 45 days if agreed by the parties. However, longer extensions are disfavored.

3.  Speaking objections during depositions are improper. Objections during depositions shall be stated concisely and in a nonargumentative and nonsuggestive manner. Examples of

OGP Version 4.0

permissible objections include: "Objection, leading," "Objection, compound," "Objection, vague." Other than to evaluate privilege issues, counsel should not confer with a witness while a question is pending. Counsel may confer with witnesses during breaks in a deposition without waiving any otherwise applicable privilege.

4. Plaintiff must file a notice informing the Court when an IPR is filed, the expected time for an institution decision, and the expected time for a final written decision, within two weeks of the filing of the IPR.

5. After the trial date is set, the Court will not move the trial date except in extreme situations. If a party believes that the circumstances warrant continuing the trial date, the parties are directed to contact the Court's law clerk.

6. The Court does not limit the number of motions for summary judgment (MSJs), *Daubert* motions, or Motions *in limine* (MIL) a party may file. However, absent leave of Court, the cumulative page limit for opening briefs for all MSJs is 40 pages per side, for all *Daubert* motions is 40 pages per side, and for all MILs is 15 pages per side. Each responsive MSJ, *Daubert*, and MIL brief is limited to the pages utilized in the opening brief or by the local rules, whichever is greater; and the cumulative pages for responsive briefs shall be no more than cumulative pages utilized in the opening briefs. Reply brief page limits shall be governed by the local rules.

7. For *Markman* briefs,[5] summary judgment motions, and *Daubert* motions, the parties shall jointly deliver to Chambers one double-sided paper copy of the Opening, Response, and Reply briefs, omitting attachments, at least 10 days before the hearing. Absent agreement to the contrary, the plaintiff shall be responsible for delivering a combined set of paper copies to chambers. Each party shall also provide an electronic copy of the briefs, exhibits, and the optional technology tutorial via USB drive. For *Markman* briefs, the parties should also include one paper copy of all patents-in-suit and the Joint Claim Construction Statement. If the Court appoints a technical advisor, each party shall deliver the same to the technical advisor, also 10 days before the hearing.

8. When filing the Joint Claim Construction Statement or proposed Protective Order, the parties shall also email the law clerk a Word version of the filed documents.

9. For all non-dispositive motions, the parties shall submit a proposed Order. The proposed Order shall omit the word "Proposed" from the title.

10. Unless the Court indicates otherwise, the following Zoom information shall be used for all non-private hearings. The public is allowed to attend non-private hearings. Any party who intends to present confidential information shall email the Court's law clerk to request a private Zoom setup.

---

[5] But if the Court appoints a technical advisor for claim construction, the parties do not need to provide a copy of the *Markman* briefs to the Court.

8

OGP Version 4.0

https://txwd-
uscourts.zoomgov.com/j/1613131172?pwd=ek9WOFZLeHZXalNYVmFOdkJabDJoQT09

Meeting ID: 161 313 1172
Passcode: 167817
One tap mobile: +16692545252,,1613131172#,,,,*167817

**SIGNED** this 7th day of March, 2022.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

9

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LED WAFER SOLUTIONS LLC, | |
| Plaintiff, | Civil Action No. 6:21-cv-00292-ADA |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| SEOUL SEMICONDUCTOR CO., LTD., | |
| Intervenor-Defendant. | |

<u>**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS**</u>
<u>**AMERICA, INC.'S NOTICE OF SUBPOENA TO LUMILEDS LLC**</u>

Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), by and through their undersigned counsel, hereby give notice that a subpoena for testimony is being served on nonparty Lumileds LLC ("Lumileds"), attached as Exhibit A.

Dated: March 25, 2022
By:  /s/ Benjamin N. Luehrs

Brian C. Nash (State Bar No. 24051103)
Email: brian.nash@pillsburylaw.com
Austin M. Schnell (State Bar No. 24095985)
Email: austin.schnell@pillsburylaw.com
PILLSBURY        WINTHROP        SHAW
PITTMAN LLP
401 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 580-9629

John M. Desmarais (*pro hac vice*)
Email: jdesmarais@desmaraisllp.com
Cosmin Maier (*pro hac vice*)
Email: cmaier@desmaraisllp.com
Yung-Hoon Ha (*pro hac vice*)
Email: yha@desmaraisllp.com
Benjamin N. Luehrs (State Bar No. 440317)
Email: bluehrs@desmaraisllp.com
Frederick J. Ding (State Bar No. 5651633)
Email: fding@desmaraisllp.com
Alexandra E. Kochian (*pro hac vice*)
Email: akochian@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

Exhibit A

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | |
|---|---|
| LED Wafer Solutions LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   6:21-cv-00292-ADA |
| Samsung Electronics Co., Ltd., Samsung Electronics America Inc., and Seoul Semiconductor Co., Ltd. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Lumileds LLC c/o Corporation Service Company Which Will Do Business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Attachment A.

| Place: Desmarais LLP<br>101 California Street, Suite 3070<br>San Francisco, CA 94111 | Date and Time:<br>04/08/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:    audio, video, and/or stenographic means

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      03/25/2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /Benjamin N. Luehrs/ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendants
Samsung Electronics Co., Ltd. and Samsung Electronics America Inc._____, who issues or requests this subpoena, are:

Benjamin N. Luehrs, 230 Park Avenue, New York, NY 10169, bluehrs@desmaraisllp.com, (212) 808-2952

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   6:21-cv-00292-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____            _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Attachment A

## ATTACHMENT A

You are required to provide one or more individuals who are knowledgeable and competent to provide testimony about the following topics.  A copy of the Interim Protective Order entered in this action for the protection of any requested proprietary, confidential, or commercially sensitive information (*see* page 5 of Judge Albright's Standing Order Governing Proceedings (OGP) 4.0—Patent Cases) is attached hereto as Attachment B.

## DEFINITIONS AND INSTRUCTIONS

1.      As used herein, "You," "Your," and "Lumileds" means Lumileds LLC, and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

2.      As used herein, "Samsung" or "Defendants" means Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

3.      As used herein, "LED Wafer" or "Plaintiff" means LED Wafer Solutions LLC and all of its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on its behalf.

4.      As used herein, "Action" means the action under the caption *LED Wafer Solutions LLC v. Samsung Electronics Co., Ltd., et al.*, Civil Action No. 6:21-cv-00292-ADA in the United States District Court for the Western District of Texas, Waco Division.

1

5.      As used herein, "Patents-in-Suit" means United States Patent Nos. 8,941,137 (the "'137 patent"), 8,952,405 (the "'405 patent"), 9,502,612 (the "'612 patent"), and 9,786,822 (the "'822 patent").

6.      As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

7.      As used herein, "any" and "all" shall be construed to mean "each and every," so as to acquire the broadest possible meaning.

8.      As used herein, "each" and "every" mean "each and every."

9.      As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

10.     As used herein, "document" has the same broad meaning as in Rule 34 of the Federal Rules of Civil Procedure.  The term "document" also encompasses tangible things.

11.     As used herein, "person" means any natural person or any business, legal, or governmental entity or association.

12.     As used herein, "earlier version" means any draft, revision, or version, whether or not published, created prior to the publication date of a particular document.

13.     As used herein, "related" or "relating" to any given subject means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified.

14.     As used herein, "identify" as applied to an event means to provide a description of the event, the date of the event, the location of the event, and the individuals and entities participating in the event.

15.     As used herein, the singular of any word shall include the plural, and the plural shall include the singular.

## DEPOSITION TOPICS

1.      The structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon Rebel White LED (for example, the device described in the LUXEON Rebel General Purpose White Portfolio Technical Datasheet DS64, attached here as Exhibit 1, the LUXEON Rebel White LEDs webpage, attached here as Exhibit 2, and the System Plus Consulting Reverse Costing Analysis: Philips Lumileds Luxeon Rebel Warm White (Ref. LXML-PWW1-XXXX), attached here as Exhibit 3) that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

2.      The first date that the Lumileds Luxeon Rebel White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

3.      The use of open thermal vias, thermal vias, and/or thermal pads in connection with the Lumileds Luxeon Rebel White LED (as described in, for example, the LUXEON Rebel Assembly and Handling Information Application Brief AB32 (2008), attached here as Exhibit 4).

4.      The structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon III White LED (for example, the device described in the Luxeon III Emitter Technical Datasheet DS45, attached here as Exhibit 5) that was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

5.      The first date that the Lumileds Luxeon III White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

6.      The structure, components, architecture, implementation, configuration, and manufacturing process of the Lumileds Luxeon Flash White LED (for example, the device described in the Luxeon Flash Technical Datasheet DS49, attached here as Exhibit 6) that was

sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States before September 20, 2009.

7.     The first date that the Lumileds Luxeon Flash White LED was sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

8.     The Lumileds flip-chip light-emitting diode (FCLED) technology (for example, the technology described in High-power AlGaInN flip-chip light-emitting diodes, attached here as Exhibit 7, and in Figure 1(b) of Evolutionary new chip design targets lighting systems, attached here as Exhibit 8).

9.     The Lumileds thin-film flip-chip light-emitting diode (TFFC LED) technology (for example, the technology described in High performance thin-film flip-chip InGaN-GaN light-emitting diodes, attached here as Exhibit 9, and in Figure 1(a) of Evolutionary new chip design targets lighting systems, attached here as Exhibit 8).

10.     The structure, components, architecture, implementation, configuration, and manufacturing process of any Lumileds white LEDs that were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States between 2005 and March 6, 2011 (such as the Luxeon I, Luxeon K2, Luxeon c, Luxeon V, SuperFlux, SnapLED, and Luxeon Altilon).

11.     The structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2010/0019260 to Epler, attached here as Exhibit 10.

12.     The first date that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2010/0019260 to Epler

were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

13.     The structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2009/0173956 to Aldaz, attached here as Exhibit 11.

14.     The first date that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2009/0173956 to Aldaz were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

15.     The structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 8,384,118 to Schiaffino, attached here as Exhibit 12.

16.     The first date that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 8,384,118 to Schiaffino were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

17.     The structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 7,419,839 to Camras, attached here as Exhibit 13.

18.     The first date that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent No. 7,419,839 to Camras were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

19.    The structure, components, architecture, implementation, configuration, and manufacturing process of Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2011/0018013 to Margalith, attached here as Exhibit 14.

20.    The first date that any Lumileds products that practice, embody, or have ever practiced or embodied any claim of United States Patent Publication No. 2011/0018013 to Margalith were sold, on sale, offered for sale, in public use, or otherwise available to the public in the United States.

21.    The first publication date of each of the following, and any earlier versions thereof:

a.    LUXEON Rebel General Purpose White Portfolio Technical Datasheet DS64, attached here as Exhibit 1;

b.    LUXEON Rebel White LEDs webpage, available at https://web.archive.org/web/20100717010601/http://www.philipslumileds.com:80 /products/luxeon-rebel/luxeon-rebel-white, attached here as Exhibit 2;

c.    LUXEON Rebel Assembly and Handling Information Application Brief AB32, attached here as Exhibit 4;

d.    Luxeon III Emitter Technical Datasheet DS45, attached here as Exhibit 5;

e.    Luxeon Flash Technical Datasheet DS49, attached here as Exhibit 6;

f.    High-power AlGaInN flip-chip light-emitting diodes, authored by J.J. Wierer, D.A. Steigerwald, M.R. Krames, J.J. O'Shea, M.J. Ludowise, G. Christenson, Y.C. Shen, C. Lowery, P.S. Martin, S. Subramanya, W. Götz, N.F. Gardner, R.S. Kern, and S.A. Stockman, published in Applied Physics Letters (May 28, 2001), attached here as Exhibit 7;

g.  Evolutionary new chip design targets lighting systems, authored by Oleg Shchekin and Decai Sun, published in Compound Semiconductor (Mar. 2007), attached here as Exhibit 8;

h.  High performance thin-film flip-chip InGaN-GaN light-emitting diodes, authored by O.B. Shchekin, J.E. Epler, T.A. Trottier, T. Margalith, D.A. Steigerwald, M.O. Holcomb, P.S. Martin, and M.R. Krames, published in Applied Physics Letters (2006), attached here as Exhibit 9;

i.  LUXEON Rebel and LUXEON Rebel ES Assembly and Handling Information Application Brief AB32, attached here as Exhibit 16;

j.  Luxeon Line Technical Data DS21, attached here as Exhibit 17;

k.  LUXEON Rebel webpage, available at https://web.archive.org/web/20080928104759/http://www.philipslumileds.com/products/luxeon/luxeonrebel, attached here as Exhibit 18; and

l.  PHILIPS Current State of the Art in High Brightness LEDs, authored by M. George Craford, presented at the American Physical Society Solid State Lighting Session (Mar. 6, 2007), attached here as Exhibit 19.

22.     The identity of the Lumileds product corresponding to the "Lumileds HP FCLED" from Figure 2 ("Lumileds' HP FCLED on a Si submount") and Figure 3 ("Lumileds' HP FCLED is in volume production") of 3D LED and IC wafer level packaging, attached here as Exhibit 15.

23.     The authenticity of all documents produced by Lumileds in response to Samsung's subpoena, as well as Exhibits 1, 2, 4-9, and 16-19 to this subpoena.

24.     Whether the documents Lumileds produced in response to Samsung's subpoena are records regularly made and kept in the course of regularly conducted activity of Lumileds, made

at or near the dates of the documents by someone with knowledge of the information contained

within the documents.

Attachment B

**FILED**

March 07, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Reuben Amaro_____

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

**STANDING ORDER GOVERNING PROCEEDINGS (OGP) 4.0—PATENT CASES**

This OGP governs proceedings in all patent cases pending before the undersigned and takes effect upon entry in all patent cases, except where noted. If there are conflicts between this OGP and prior versions in existing cases that the parties are unable to resolve, the parties are encouraged to contact the Court for guidance via email to the Court's law clerk.

Parties should generally email any inquiries to the Court's law clerk. The Court's voicemail is not checked regularly. Email is the preferred contact method.

Email for the Court's law clerk: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov.

## I.   **GENERAL DEADLINES**

The following deadlines apply:

1. Patent cases shall be set for a Rule 16 Case Management Conference (CMC) in accordance with the Court's Standing Order Regarding Notice of Readiness in Patent Cases.

2. Not later than 7 days before the CMC. The plaintiff shall serve preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. The plaintiff shall also identify the priority date (*i.e.* the earliest date of invention) for each asserted claim and produce:  (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit.

3. Two weeks after the CMC. The parties shall file a **motion** to enter an agreed Scheduling Order that generally tracks the exemplary schedule attached as Exhibit A to this OGP, which should suit most cases. If the parties cannot agree, the parties shall submit a joint motion for entry of a Scheduling Order briefly setting forth their scheduling disagreement. Absent agreement of the parties, the plaintiff shall be responsible for the timely submission of this and other joint filings. When filing any Scheduling Order, the parties shall also jointly send an editable copy to the Court's law clerk.

4. Seven weeks after the CMC. The defendant shall serve preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the defendant contends are directed to ineligible subject matter under section 101. The 101 contention shall (1) identify the alleged abstract idea, law of nature, and/or natural phenomenon in each challenged claim; (2) identify each claim element alleged to be well-understood, routine, and/or conventional; and (3) to the extent not duplicative of 102/103 prior art contentions, prior art for the contention that

claim elements are well-understood, routine, and/or conventional. The defendant shall also produce (1) all prior art referenced in the invalidity contentions, and (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s).[1]

## II.   DISCOVERY

Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery shall be stayed until after the *Markman* hearing. Notwithstanding this general stay of discovery, the Court will permit limited discovery by agreement of the parties, or upon request, where exceptional circumstances warrant. For example, if discovery outside the United States is contemplated, the Court is inclined to allow such discovery to commence before the *Markman* hearing.

Following the *Markman* hearing, the following discovery limits apply. The Court will consider reasonable requests to adjust these limits should circumstances warrant.

1. Interrogatories:  30 per side[2]
2. Requests for Admission:  45 per side
3. Requests for Production:  75 per side
4. Fact Depositions:  70 hours per side (for both party and non-party witnesses combined)
5. Expert Depositions:  7 hours per report[3]

**Electronically Stored Information**. As a preliminary matter, the Court will not require general search and production of email or other electronically stored information (ESI), absent a showing of good cause. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall contact the Court to discuss their respective positions.

## III.   DISCOVERY DISPUTES

**Procedure.** A party may not file a Motion to Compel discovery unless: (1) lead counsel have met and conferred in good faith to try to resolve the dispute, and (2) the party has contacted the Court's law clerk to summarize the dispute and the parties' respective positions. When

---

[1] To the extent it may promote early resolution, the Court encourages the parties to exchange license and sales information, but any such exchange is optional during the pre-*Markman* phase of the case.

[2] A "side" shall mean the plaintiff (or related plaintiffs suing together) on the one hand, and the defendant (or related defendants sued together) on the other hand. If the Court consolidates related cases for pretrial purposes, with regard to calculating limits imposed by this OGP, a "side" shall be interpreted as if the cases were proceeding individually. For example, in consolidated cases the plaintiff may serve up to 30 interrogatories on each defendant, and each defendant may serve up to 30 interrogatories on the plaintiff.

[3] For example, if a single technical expert submits reports on both infringement and invalidity, he or she may be deposed for up to 14 hours in total.

OGP Version 4.0

contacting the Court's law clerk for discovery or procedural disputes, the following procedures shall apply.

If the parties remain at an impasse after lead counsel have met and conferred, the requesting party shall email a summary of the issue(s) and specific relief requested to all counsel of record. The summary of the issue shall not exceed 500 words for one issue or a combined 1000 words for multiple issues. The responding party has three business days thereafter to provide an email response, also not to exceed 500 words for one issue or a combined 1000 words for multiple issues. The specific relief requested should propose the exact language to be issued in a court order for each part of every disputed issue. The specific relief requested does not count toward word limits. The Court encourages the parties to provide their submission in a table format which identifies the disputed issues and specific relief requested.

Example:

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| RFP 1: All sale records of the Product. | Responding Party didn't produce anything. Responding Party keeps its sales records in a sales database.<br><br>Relief: Order that "Responding Party must produce a copy of the sales database within 7 days." | We found no sales records of the Product in the sales database.<br><br>Relief: Find that "no documents responsive to RFP 5 exist" and deny Requesting Party's relief. |
| ROG 5: Identify all employees who worked on the Product. | Responding Party only identified a subset of the employees.<br><br>Relief: Order that "Responding Party is compelled to fully respond to ROG 5 by identifying the names and locations of the remaining employees who worked on Product by [date]." | We identified the relevant employees. The other employees are not relevant, and it is too burdensome to identify every employee.<br><br>Relief: Order that "Responding Party need not identify any other employees in response to ROG 5." |

Once the opposing party provides its response, the requesting party shall email the summaries of the issues to the Court's law clerk with opposing counsel copied. If a hearing is requested, the parties shall indicate in the email whether any confidential information will be presented. Thereafter, the Court will provide guidance to the parties regarding the dispute or arrange a telephonic or Zoom hearing. The hearing shall proceed in the sequence of issues charted.

**<u>Written Order.</u>**[4] Within 7 days of the discovery hearing, the parties shall email a jointly proposed order to the Court's law clerk that includes the summaries of the issues, relief

---

[4] This supersedes June 17, 2021 Standing Order for Discovery Hearings in Patent Cases.

OGP Version 4.0

requested, and the parties' understanding of the Court's ruling. If one party disputes the language of the order, then that party shall send an editable version of the proposed order to the Court's law clerk with the disputed language in tracked changes.

## IV.   VENUE DISCOVERY

The Court hereby establishes the following presumptive limits on discovery related to venue and jurisdiction: each party is limited to 5 interrogatories, 10 Requests for Production, and 10 hours of deposition testimony. The time to respond to such discovery requests is reduced to 20 days. If a party believes these limits should be expanded, the party shall meet and confer with opposing counsel and if an impasse is reached, the requesting party is directed to contact the Court for a telephonic hearing.

Venue or jurisdictional discovery shall be completed no later than ten weeks after the filing of an initial venue motion.  Parties shall file a notice of venue or jurisdictional discovery if the discovery will delay a response to a motion to transfer.

## V.   MOTIONS FOR TRANSFER

This section applies to all cases filed on or after the effective date of this OGP. Otherwise, the Second Amended Standing Order Regarding Motions for Inter-District Transfer controls earlier-filed cases.

A motion to  transfer anywhere may be filed within three weeks after the CMC or within eight weeks of receiving or waiving service of the complaint, whichever is later. Thereafter, a movant must show good cause for any delay and seek leave of court. The deadline for plaintiff's response is two weeks after the completion of venue or jurisdictional discovery. The deadline for Defendant's reply is two weeks after the filing of the response.

The following page limits and briefing schedule apply to motions to transfer:

    a.   Opening – 15 pages

    b.   Response – 15 pages, due 14 days after the completion of venue or jurisdictional discovery, if such discovery is conducted; otherwise, 14 days after the Opening brief

    c.   Reply – 5 pages, due 14 days after the Response brief

All parties who have filed a motion to transfer shall provide the Court with a status report indicating whether the motion has been fully briefed at each of the following times: 1) when the motion to transfer becomes ready for resolution, 2) at four weeks before the *Markman* hearing date if the motion to transfer remains unripe for resolution and 3) if there are multiple *Markman* hearings, the status report is due six weeks before the first scheduled *Markman* hearing. In addition, if by one week before the *Markman* hearing the Court has not ruled on any pending motion to transfer, the moving party is directed to email the Court's law clerk (and the technical advisor, when appointed), and indicate that the motion to transfer is pending.

If a motion to transfer to another district remains pending, the Court will either promptly resolve the pending motion before the *Markman* hearing or postpone the *Markman* hearing. Whenever a *Markman* hearing is postponed pursuant to this OGP (e.g., because the transfer motion has not yet ripened or only recently ripened), Fact Discovery will begin one day after the originally scheduled *Markman* hearing date.

## VI.   MEET AND CONFER REQUIREMENT FOR EARLY MOTIONS TO DISMISS INDIRECT AND WILLFUL INFRINGEMENT

Any party seeking to dismiss claims of indirect or willful infringement before fact discovery must first meet and confer with the opposing party to discuss dismissing those allegations without prejudice, with leave to re-plead those allegations with specificity, if supported by a good faith basis under Rule 11, within three months after fact discovery opens while permitting fact discovery on indirect and willful infringement during those three months. The party moving to dismiss must attach a certification of compliance with this OGP to its motion to dismiss.

An agreement to dismiss under this section shall be filed as a joint notice instead of as a motion.

## VII.   INTERIM PROTECTIVE ORDER

The Court provides a Model Protective Order on its website. Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information:

> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys' Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this OGP shall keep it confidential and use it only for purposes of litigating the case.

## VIII.   CLAIM CONSTRUCTION

### Limits for Number of Claim Terms to be Construed

**Terms for Construction**. Based on the Court's experience, the Court believes that it should have presumed limits on the number of claim terms to be construed. The "presumed limit" is the maximum number of terms that each side may request the Court to construe without further leave of Court. If the Court grants leave for additional terms to be construed, depending on the

OGP Version 4.0

complexity and number of terms, the Court may split the *Markman* hearing into multiple hearings.

The presumed limits based on the number of patents-in-suit are as follows:

| 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|
| 8 terms | 10 terms | 12 terms |

When the parties submit their joint claim construction statement, in addition to the term and the parties' proposed constructions, the parties should indicate which party or side proposed that term, or if that was a joint proposal.

### Briefing Procedure and Page Limits

The Court will require non-simultaneous *Markman* briefing with the following default page limits.  When exceptional circumstances warrant, the Court will consider reasonable requests to adjust these limits. These page limits shall also apply collectively for coordinated and consolidated cases; however, the Court will consider reasonable requests to adjust page limits in consolidated cases where circumstances warrant. The Court has familiarity with the law of claim construction and encourages the parties to forego lengthy recitations of legal authorities and to instead focus on the substantive issues unique to each case.

Unless otherwise agreed to by the parties, the default order of terms in the parties' briefs shall be based on 1) the patent number (lowest to highest), the claim number (lowest to highest), and order of appearance within the lowest number patent and claim. An example order may be as follows:

1. 10,000,000 Patent, Claim 1, Term 1
2. 10,000,000 Patent, Claim 1, Term 2 (where Term 2 appears later in the claim than does Term 1)
3. 10,000,000 Patent, Claim 2, Term 3 (where Term 3 appears later in the claim than does Terms 2 and 3)
4. 10,000,001 Patent, Claim 1, Term 4
5. 10,000,001 Patent, Claim 3, Term 5
6. 10,000,002 Patent, Claim 2, Term 6

If that the same or similar terms appear in multiple claims, those same or similar terms should be ordered according to the lowest patent number, lowest claim number, and order of appearance within the patent and claim.

| Brief | 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|---|
| Opening (Defendant) | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |

6

| Response (Plaintiff) | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Reply (Defendant) | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |
| Sur-Reply (Plaintiff) | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |

After briefing concludes, the parties shall file a Joint Claim Construction Statement and email an editable copy to the Court's law clerks.

### Technology Tutorials and Conduct of the *Markman* Hearing

Technology tutorials are optional, especially in cases where a technical advisor has been appointed. If the parties submit one, the tutorial should be in electronic form, with voiceovers, and submitted at least 10 days before the *Markman* hearing. In general, tutorials should be: (1) directed to the underlying technology (rather than argument related to infringement or validity), and (2) limited to 15 minutes per side. The tutorial will not be part of the record and the parties may not rely on or cite to the tutorial in other aspects of the litigation.

The Court generally sets aside one hour for the *Markman* hearing; however, the Court is open to reserving more or less time, depending on the complexity of the case and input from the parties. As a general rule, the party opposing the Court's preliminary construction shall go first. If both parties oppose the Court's preliminary construction, the plaintiff shall typically go first.

The Court will provide preliminary constructions to the parties ahead of the *Markman* hearing. At the *Markman* hearing, the Court encourages oral arguments that fine-tune the preliminary constructions over arguments repeated from the briefs.

### IX.   GENERAL ISSUES

1. The Court will entertain reasonable requests to streamline the case schedule and discovery. Parties should contact the Court's law clerk when a change might help streamline the case.

2. The Court is generally willing to extend the response to the Complaint up to 45 days if agreed by the parties. However, longer extensions are disfavored.

3. Speaking objections during depositions are improper. Objections during depositions shall be stated concisely and in a nonargumentative and nonsuggestive manner. Examples of

permissible objections include: "Objection, leading," "Objection, compound," "Objection, vague."  Other than to evaluate privilege issues, counsel should not confer with a witness while a question is pending. Counsel may confer with witnesses during breaks in a deposition without waiving any otherwise applicable privilege.

4. Plaintiff must file a notice informing the Court when an IPR is filed, the expected time for an institution decision, and the expected time for a final written decision, within two weeks of the filing of the IPR.

5. After the trial date is set, the Court will not move the trial date except in extreme situations. If a party believes that the circumstances warrant continuing the trial date, the parties are directed to contact the Court's law clerk.

6. The Court does not limit the number of motions for summary judgment (MSJs), *Daubert* motions, or Motions *in limine* (MIL) a party may file. However, absent leave of Court, the cumulative page limit for opening briefs for all MSJs is 40 pages per side, for all *Daubert* motions is 40 pages per side, and for all MILs is 15 pages per side. Each responsive MSJ, *Daubert*, and MIL brief is limited to the pages utilized in the opening brief or by the local rules, whichever is greater; and the cumulative pages for responsive briefs shall be no more than cumulative pages utilized in the opening briefs. Reply brief page limits shall be governed by the local rules.

7. For *Markman* briefs,[5] summary judgment motions, and *Daubert* motions, the parties shall jointly deliver to Chambers one double-sided paper copy of the Opening, Response, and Reply briefs, omitting attachments, at least 10 days before the hearing. Absent agreement to the contrary, the plaintiff shall be responsible for delivering a combined set of paper copies to chambers. Each party shall also provide an electronic copy of the briefs, exhibits, and the optional technology tutorial via USB drive. For *Markman* briefs, the parties should also include one paper copy of all patents-in-suit and the Joint Claim Construction Statement. If the Court appoints a technical advisor, each party shall deliver the same to the technical advisor, also 10 days before the hearing.

8. When filing the Joint Claim Construction Statement or proposed Protective Order, the parties shall also email the law clerk a Word version of the filed documents.

9. For all non-dispositive motions, the parties shall submit a proposed Order. The proposed Order shall omit the word "Proposed" from the title.

10. Unless the Court indicates otherwise, the following Zoom information shall be used for all non-private hearings. The public is allowed to attend non-private hearings. Any party who intends to present confidential information shall email the Court's law clerk to request a private Zoom setup.

---

[5] But if the Court appoints a technical advisor for claim construction, the parties do not need to provide a copy of the *Markman* briefs to the Court.

OGP Version 4.0

https://txwd-
uscourts.zoomgov.com/j/1613131172?pwd=ek9WOFZLeHZXalNYVmFOdkJabDJoQT09

Meeting ID: 161 313 1172
Passcode: 167817
One tap mobile: +16692545252,,1613131172#,,,,*167817

**SIGNED** this 7th day of March, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

9

OGP Version 4.0